[Sac. No. 1019.   Department Two.—April 16, 1904.]

## W. H. MERRIFELD, Appellant, v. MARYLAND GOLD QUARTZ MINING COMPANY, Respondent.

ACTION FOR DEATH OF MINOR EMPLOYEE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS OF FACT—IMPROPER INSTRUCTIONS.—In an action for the death of a minor employee, where the alleged negli-gence of the defendant employer in ordering the deceased to work out of his usual employment in an unsafe place, without instruc-tions as to the dangers, and in not taking proper precautions to prevent accident, presented a question of fact which the plaintiff was entitled to have placed before the jury, under correct instruc-tions, it was improper to give instructions to the jury which ignored the alleged negligence of the defendant, and which were addressed solely to contributory negligence of the deceased, who cannot be said, as matter of law, to have accepted all the ordinary risks inci-dent to the dangerous work at which he was set.

ID.—MEASURE OF CARE REQUIRED OF MINOR—IMPROPER INSTRUCTION.— A minor is only held to the exercise of such degree of care and discretion as is reasonably to be expected from one of his age; and it was improper to instruct the jury that he "must be presumed to have been of sufficient discretion to take care of himself and to have taken notice of all patent and obvious dangers which any ordi-narily prudent man could see from inspection."

APPEAL from an order of the Superior Court of Nevada County denying a new trial.   F. T. Nilon, Judge.

The facts are stated in the opinion.

George D. Buckley, for Appellant.

Charles W. Kitts, for Respondent.

CHIPMAN, C.—Plaintiff brought the action to recover damages for the death of his son, Thomas Merrifeld, which occurred while the latter was in defendant's employment. The cause was tried with a jury and defendant had the verdict. Plaintiff appeals from the order denying his motion for a new trial.

Deceased at the time of his death was eighteen and one-half years old. It was admitted at the trial that "he was employed as a shoveler on the dump" of defendant's quartz-mill, his wages being one dollar and fifty cents per day; and he "was to do any work called for." He had no experience in handling mining machinery, and was set to work shoveling on the dump-pile. While employed there, he and a fellow-laborer—one Meagher—were directed by the superintendent to report to the millman—one Loney—to assist in putting the cams on a shaft. The place where this was to be done was three or four feet from a moving battery; the cams were about three feet long, and weighed two hundred and thirty pounds each; several cams had been adjusted, and Meagher and deceased were lifting the last one when, as Meagher testified, deceased "let his end slip through his hand, staggered, and fell backwards, and was caught by one of the revolving cams by the heel and dragged in." Witness Noblet saw the accident. He testified: "Mr. Loney was astride of the shaft. Meagher was at his right, Merrifeld at his left, each holding one end of the cam about to put in on the shaft. Merrifeld's head was six inches from the next battery, which was moving." Loney testified that deceased had not been called upon to do this kind of work before. "The millman usually adjusts the cams. . . . A man in putting on cams should be careful. I saw Merrifeld was quick and somewhat rash. I cautioned him to be careful. . . . I do not know what caused him to slip. Of course the cams were a little greasy. . . . There were no guards. Did not need any if he was careful. Merrifeld had hold of the hooked end of the cam, which afforded a good hold. There was plenty of room to safely do the work with the exercise of ordinary care. All the

danger was plainly in view.'' Several witnesses, practical millmen, testified ''that there was no danger in doing the work at which Merrifeld was injured; that he himself must have been careless; that there was abundant room in which to perform the work Merrifeld was engaged in; that the danger was apparent to any one of ordinary understanding; that it was customary to do the work in the manner in which it was being done when Merrifeld was injured, and with the exercise of ordinary care and prudence there was no risk or danger, in their opinion.'' There was evidence also that it was customary to put on the cams without stopping the other batteries, and that the work was more dangerous than the work on the dump. It also appeared that it was not possible to stop the moving machinery after deceased was drawn into it until too late to be of any avail. There were ''no rules or regulations established by defendant for the guidance and protection of the men while engaged in adjusting the cams.'' Deceased received no instructions except that he was ''cautioned to be careful,'' but whether this had reference to the moving batteries does not appear.

The facts as above narrated appear without conflict. The principal contention of appellant is, that the jury were incorrectly instructed, and numerous instructions are referred to as showing error and resultant injury. The instructions given at the request of defendant—some seventeen in number—are among others pointed out, in some of which the court seems to wholly ignore the question of defendant's possible negligence, and directs the jury to find a verdict for defendant if they should find that the accident occurred through any lack of care whatever on the part of deceased.

It is charged by defendant that the injury to deceased was occasioned wholly by his want of ordinary care, and it is suggested that the court should have directed a verdict for the defendant. It is hence claimed that plaintiff was not injured, because the evidence, under correct instructions, would not have justified any different verdict. We cannot say as matter of law that this is true. It was alleged in the complaint, and is urged by plaintiff, that the defendant was guilty of negligence in ordering deceased to work in an unsafe place without first giving him instructions how to perform the work with safety to himself and cautioning him as to

the dangers; also, in not having guards erected to prevent accident, and in not having any regulations governing those engaged in the work, and in not stopping the moving battery while adjusting the cams. It is not alleged or claimed that the accident occurred through any negligence of the millman, Loney, or of Meagher, the fellow-laborer of deceased; and nothing in the evidence indicates that the accident resulted from the way the cams were being handled by these three persons, except as negligence may be inferred from the facts as to the particular grounds alleged and claimed as above stated. We do not think the issues presented a case where it could be said, upon all the evidence, that only one conclusion could have been made, and hence that it was immaterial whether that conclusion was made by the direction of the court or by the jury, according to the rule stated in *Los Angeles F. and M. Co.* v. *Thompson*, 117 Cal. 594, and that for this reason it would be immaterial whether the instructions were erroneous or not. There were issues raising the question of defendant's negligence which plaintiff was entitled to have placed before the jury under correct instructions. (See the cases of *Holloway* v. *Pasadena etc. Ry. Co.*, 130 Cal. 177; *Wahlgren* v. *Market-Street Ry. Co.*, 132 Cal. 656.) The instructions marked third, twelfth, thirteenth, and sixteenth, and perhaps others given at defendant's request, are obnoxious to the objection urged by plaintiff. For example, the twelfth instruction was: "It was the duty of said Thomas Merrifeld when he was performing said work to exercise such care as a prudent man would do, and if the accident occurred through any lack of such care on his part, the defendant is not liable for the result, and you must find your verdict for the defendant." It may be true that the evidence would warrant a finding that the accident occurred wholly through the contributory negligence of deceased, but it was due to plaintiff that such finding should be made after a consideration also of the alleged negligence of defendant, which the instruction seems not to take into account. Unquestionably the risk was greater where deceased was injured than while working on the dump as a shoveler. He was not hired to perform the skilled work of an engineer, or millman such as Loney, who directed the millwork. Whether the place was reasonably safe with moving machinery so near; whether

the character of the work was such as to call for special instructions how to perform it, and, if so, whether such instructions were given; whether deceased should have been cautioned, and, if so, whether he was cautioned of the danger; whether guards were practicable or required as a protection against accident; whether it was negligence on defendant's part not to stop the other batteries while putting the cams on the shaft of the battery not running, were questions of fact for the jury, and to what extent, if any, they contributed to the injury. It was error to cast all responsibility upon the deceased and entirely relieve the defendant, as the instructions in effect did. It was for the jury to find, upon a consideration of all the facts, whether the injury was occasioned by the contributory negligence of the deceased or by unavoidable accident. The court seems to have thought it necessary to instruct the jury upon the question of defendant's negligence, and did so in giving the instruction asked by plaintiff, and so also in giving instructions on its own motion. But they were injuriously confusing, and, we think, clearly contradictory of and inconsistent with the instructions given at request of defendant. The court said to the jury in the thirteenth instruction: If deceased, ''by any want of care or neglect on his part, caused the accident complained of, then the Maryland Company is not responsible, and you must find a verdict in its favor.'' This positive and plain direction required the jury to find only as to the negligence of deceased, and to act upon that finding alone. It is not possible for us to say that the jury did not follow this and other similar instructions now complained of rather than the instructions subsequently given.

Defendant's instruction marked sixth was, that the law presumed that deceased ''accepted all the usual and ordinary risks incident to the work he was performing when he was injured.'' The seventh instruction was, that any risk from moving machinery which he ''could see and guard against, or ought to have seen when he commenced work in defendant's mill, was a risk incident to the work he was performing and was one he accepted,'' and defendant ''was not liable for any injury arising therefrom.'' The sixth instruction might apply in a case where a servant is employed to do a particular kind of work which by its nature would obviously give rise

to a presumption that the servant "accepted all the usual and ordinary risks incident" to its performance. But where the servant is employed "as a shoveler on the dump" of a quartz-mill, receiving a shoveler's wages, and is put to work in a dangerous place in the mill, and is required to perform labor upon machinery for which he was not employed and with which he was not familiar, it cannot be said as a matter of law that he accepted all the ordinary risks incident to that work. Nor can it be said in the present case as a matter of law that every risk which deceased could see and guard against was a risk incident to the work he was performing, and that defendant "was not liable for any injury arising therefrom," as stated in the seventh instruction. The case is not one where the court would be authorized to instruct that defendant was absolved from all liability simply because the risk was one which was open and visible. There was an issue presented of defendant's negligence, notwithstanding the visible danger, which should not have been taken away from the jury.

It was said in *Hennesey* v. *Bingham,* 125 Cal. 627: "Negligence is the ultimate fact to be inferred from many probative facts. The inference is within the province of the jury, even when the facts are undisputed. When different conclusions as to negligence can reasonably be drawn from the admitted facts, it is not for the court to instruct the jury as to which is to be adopted."

In *Martin* v. *California Cen. Ry. Co.,* 94 Cal. 326, the rule was said to be, that the question of negligence was for the jury to decide, under all the evidence, even if it appeared that the deceased knew the character, kind, and dangerous nature of the couplings, and that such knowledge is a circumstance to be considered by the jury, though not necessarily decisive. (See subject of contributory negligence of servants, duty of masters, and assumption of risks by servants considered in *Ingerman* v. *Moore,* 90 Cal. 410;[1] *Gisson* v. *Schwabacher,* 99 Cal. 419.)

The fourteenth instruction given by defendant was as follows: "Thomas Merrifeld, when he commenced the work . . . in prosecuting which he was injured, must be presumed to have been of sufficient discretion to care for himself, and

[1] 25 Am. St. Rep. 138.

must be presumed to have taken notice of all patent and obvious dangers which any ordinarily prudent man could see from inspection." Deceased was a minor. It is true he had reached an age (eighteen and one half years) when his judgment was presumably more mature than that of a child of tender years, but we do not think it could be said as a matter of law that in doing the work to which he was assigned he had "sufficient discretion to care for himself" under every and all circumstances which might surround him, as the instruction implied. Nor could it be said that deceased must be presumed to have taken notice of all the dangers which would be obvious to "any ordinarily prudent man." To do so would ignore any possible lack of judgment through the minority of deceased and place his judgment upon an equality with all ordinarily prudent men of mature years. "It is now settled law, by an overwhelming weight of authority, that a child is held, so far as he is personally concerned, only to the exercise of such degree of care and discretion as is reasonably to be expected from children of his age," (Shearman and Redfield on Negligence, sec. 73); and the authors say that "no injustice is done to the defendant by this limitation of the defense of contributory negligence, since the rule itself is not established primarily for his benefit, and he can never be made liable, if he has not been himself in fault." It is not possible for the court to prescribe any given age (short of majority) when it can be said as a matter of law that a minor has attained that degree of discretion which may be imputed to all "ordinarily prudent persons." The authors cite the case of *Haycroft* v. *Lake Shore etc. R. Co.*, 64 N. Y. 636, where the question whether a girl sixteen years old, whose injury was clearly due to her own carelessness, was guilty of contributory negligence was left to the jury. (See, also, *McCarragher* v. *Rogers*, 120 N. Y. 526, citing case last above, holding that the question of contributory negligence was for the jury.)

It would be sufficient protection to defendant, and would be within the rule stated by Shearman and Redfield on Negligence (sec. 73), to charge that deceased must be presumed to have had such discretion and to have taken such notice of patent and obvious dangers as would be reasonably expected of a person of his age and experience.

It is not deemed necessary to comment further on instructions complained of.

It is advised that the order be reversed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.          Henshaw, J., Lorigan, J.

McFARLAND, J., concurring.—I concur in the judgment of reversal—but not in all that is said in the foregoing opinion. I think that the court below erred in the twelfth instruction by not distinguishing between a minor and a mature person, with regard to the care, prudence, and judgment which each is required to exercise; and that the instructions, as a whole, do not keep that distinction in view. If the death of the deceased was caused by his own negligence, the plaintiff cannot recover; and, of course, a minor can be guilty of contributory negligence. (*Killelea* v. *California Horseshoe Co.,* 140 Cal. 602.) "Children, as well as adults, should use the prudence and discretion which persons of their age ordinarily have, and they cannot be permitted with impunity to indulge in conduct which they know, or ought to know, to be careless. The law imposes upon minors the duty of giving such attention to their surroundings and care to avoid danger as may fairly and reasonably be expected from persons of their age and capacity." (*Studer* v. *Southern Pacific Co.,* 121 Cal. 404.[1]) But a jury, in determining whether or not a person, under given circumstances, exercised reasonable care, should consider whether such person was an adult or a minor; and if the latter, whether he exercised such judgment, prudence, and care—considering his age and intelligence—as could reasonably be expected of him. It is error, however, to put, by a general rule, a minor and an adult in the same class with respect to prudence and judgment, as was done in the case at bar.

[1] 66 Am. St. Rep. 39.