[Civ. No. 12654. First Dist., Div. One. Sept. 5, 1944.]

ELMER K. GUNTER, a Minor, etc., et al., Respondents, v. CARL CLAGGETT et al., Appellants.

Redman, Alexander & Bacon for Appellants.

Carlson, Collins & Gordon and Nichols & Richard for Respondents.

PETERS, P. J.—Shortly after 2 p. m. on the afternoon of March 30, 1943, Elmer Gunter, a minor of the age of eighteen, was operating a motorcycle in a northerly direction on Garrard Boulevard, in the city of Richmond, and the defendant Carl Claggett was driving an automobile registered in the name of his wife, the defendant Mildred Claggett, south on the same boulevard. Where Topeka Street comes into Garrard Boulevard from the east, Claggett attempted to make a left turn. During this maneuver the automobile and motorcycle collided. As a result of the accident Elmer received the personal injuries, and his father, plaintiff John Gunter, incurred the expenses for which this action was brought. Based on jury verdicts, judgment was entered in favor of Elmer for $5,000, and in favor of his father for $1,279.05. From this judgment the defendants appeal.

Garrard Boulevard runs north and south. It is 56 feet wide from curb to curb, and has a white line down the center.

There is a railroad to the west of Garrard Boulevard, and near the scene of the accident there are no streets coming into Garrard Boulevard from the west. Ohio Avenue comes into Garrard Boulevard from the east at an acute angle, so that one driving south on the boulevard would have to make about a 135° angle turn to make a left turn from the boulevard into Ohio Avenue. About 120 feet south of the south curb of Ohio Avenue, Topeka Street comes into the boulevard from the east, also at an acute angle, but opposite to the acute angle of Ohio Avenue, so that one driving south on the boulevard and making a left turn into Topeka Street would make a turn of about 45°. Topeka Street is 40 feet wide from curb to curb, and has no white center line. Between Ohio Avenue and Topeka Street, and southerly from Topeka Street east of the boulevard, is a large housing project for war workers employed at the Richmond shipyards.

At the time of the accident traffic was light, the day was clear and bright, the highways dry, and the two operators of the colliding vehicles had clear, unobstructed views in front of their respective vehicles. As already stated, Carl Claggett was driving south in an automobile on Garrard Boulevard. Riding with him was John Metcalf, also a shipyard worker, whom Claggett had picked up a few blocks northerly from the scene of the accident. Elmer Gunter was driving a motorcycle northerly on the same boulevard, and with him on the motorcycle was his friend Frank Lawson. Lawson was unavailable at the time of trial, being on active duty with the armed forces. The fact that Elmer had a passenger on the cycle did not in any way interfere with the operation of the vehicle.

The evidence is conflicting as to just how the accident occurred. The evidence most favorable to respondents shows that when Elmer was about a block south of Topeka Street he saw the Claggett automobile coming towards him about two blocks away. Elmer was then driving on his right-hand side of the highway, about midway between the white line and the east curb. When first observed, the Claggett car was on its proper side of the highway close to the white center line. When the two vehicles thus approached each other so that they were separated by about 100 feet, the automobile started to make a gradual left turn towards Topeka Street. Claggett gave no signal indicating he was about to make a

left turn, but turned into the lane of traffic in which Elmer was traveling, and, in doing so, definitely cut the corner of the intersection. The moment Elmer saw the automobile start to turn he applied the brakes on the motorcycle. The cycle was equipped with both hand and foot brakes and Elmer testified that he put both brakes on hard. Garrard Boulevard, at the scene of the accident, is wavy and ripply, so that when the brakes were applied the cycle bounced up and down and the brakes did not hold. Elmer tried to turn the cycle to go in back of the automobile, but was unsuccessful. The cycle skidded about 69 feet, and it and the automobile came into collision on Garrard Boulevard in the traffic lane in which Elmer was proceeding and about opposite to where Topeka Street comes into the boulevard. As a result of the collision, Elmer was hospitalized for six weeks. He suffered compound fractures of both bones in his right leg, and a deep laceration of the right forearm that tore the muscles and which left a defect that extends down the arm to the fingers. There was evidence that the leg would be permanently bowed.

Appellants urge that the evidence is insufficient, as a matter of law, to support a finding of actionable negligence on their part. In this connection great reliance is placed upon the testimony of appellants' witnesses, who testified that Carl Claggett signaled for a left turn and did not cut the corner. Such testimony merely created a conflict with that of respondents. Such conflict, under elementary principles, must be resolved in favor of respondents. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Estate of Pessagno*, 58 Cal.App.2d 390 [136 P.2d 644].) Section 544(b) of the Vehicle Code requires that the driver of a vehicle intending to turn left must signal his intention during the fifty feet before he turns. Section 551 of the same code requires one making a left turn to yield the right-of-way "to any vehicle approaching from the opposite direction" which is within the intersection or so close as to constitute an immediate hazard, but it is provided that if the requisite signal is given, those not within the intersection must grant the turning driver the right-of-way. Section 540(b) prohibits cutting corners. In view of these statutory provisions, violation of which constitutes, of course, negligence *per se,* and in view of the evidence, the jury could have found, and apparently did, that Carl Claggett was negligent in not giving the required

signal and in cutting the corner. ██ Appellants urge, however, that, assuming the existence of such negligence, as a matter of law it was not the proximate cause of the accident. The argument is without merit. ██ Once negligence is proved, whether such negligence is or is not a, or the, proximate cause of the accident, is normally a question of fact for the jury. ██ No special circumstances here appear to take this case out of that general rule.

██ Appellants next contend that Elmer was guilty of contributory negligence as a matter of law. This argument requires but scant attention. It is mainly based on the evidence that, after the accident, it was discovered that the motorcycle had skidded about 69 feet before the collision. It is argued that one who admittedly saw the oncoming automobile and was unable to stop, under the circumstances, necessarily did not have the vehicle under the required control, and, as a matter of law, was negligent. Whether Elmer was negligent, and, if so, whether such negligence proximately contributed to the accident, were questions of fact for the jury. Its verdict, except in rare circumstances not here present, is conclusive on this issue.

██ Appellants next object to an instruction to the effect that Elmer would be guilty of contributory negligence if he did something which an ordinarily prudent person of the same age and experience would not have done. Appellants urge that this instruction sets forth the duty of care required of children, and contend that the jury should have been informed that the standard of conduct to which Elmer should have conformed was that of a reasonable man. The point is without merit. Elmer was a minor, aged 18. In *Merrifeld* v. *Maryland etc. Co.*, 143 Cal. 54 [76 P. 710], it was held that a judgment for defendant must be reversed where the jury had been instructed that an 18 year old minor must exercise the degree of care required of an ordinarily prudent man. The court expressly held that the plaintiff there—aged 18 and a half—was a minor, and that the proper instruction should have been that the plaintiff was required to exercise that degree of care that would be reasonably expected of a person of his age or experience—the exact instruction given in the present case.

██ Objection is also made to the refusal of the trial court

to instruct on unavoidable accident, which defense had been pleaded. There was no evidence to support this theory of the case. An unavoidable accident is, of course, one not caused by the fault of any of the parties. ■ To be entitled to this defense it is incumbent upon the pleading party to prove that something occurred over which he had no control. Moreover, unavoidable accident is simply another way of urging that defendant was not negligent. ■ The jury has found, and the finding is supported, that defendant was negligent. No prejudicial error occurred in failing to instruct on this issue.

Appellants also complain of the failure to give other instructions. We have read the charge as a whole. In our opinion the charge was full, fair and complete. No prejudice could possibly have been suffered by the failure to give the requested instructions.

■ The next contention is that the damages were excessive. The jury allowed the father $1,279.05 as special damages. That award is not challenged as being excessive. Appellants do contend, however, that the $5,000 award to Elmer was excessive. The point is without merit. Elmer suffered a compound fracture of both bones in his right leg. Although a good union had been obtained by his doctor, a permanent deformity in the nature of a bowing of the bones resulted. He also had a fractured wrist and deep laceration of the right forearm, the last injury tearing the muscles to such an extent that the entire arm has been affected. He was hospitalized for six weeks. Appellants have cited no case where a comparable award for similar injuries was held to be excessive as a matter of law. The award was clearly within the realm of reasonableness. (*Thompson* v. *Baldwin*, 26 Cal.App.2d 703 [80 P.2d 198]; *Mastro* v. *City of San Diego*, 17 Cal.App.2d 331 [62 P.2d 407].)

■ The last contention necessary to discuss has to do with the admissibility of certain evidence. Prior to the accident Elmer had been inducted into the United States Navy, and, at the time of the accident, was on a furlough which was to expire the next day. As one of the elements of damage, to show mental suffering, respondents were permitted to introduce into evidence Elmer's official medical discharge received after the accident, and Elmer was permitted to testify that the medical discharge received by him from the naval authori-

ties while he was in the hospital caused him mental suffering. The discharge was admitted over the objection that it was "incompetent, irrelevant and immaterial, and hearsay." The court refused to permit Elmer to testify that he had been discharged, but required that the official discharge itself be produced. The document, an official naval form, was signed by the officer in charge of the Navy Recruiting Station in San Francisco, was dated May 3, 1943, about five weeks after the accident, and recites that Elmer Gunter has been discharged from the U. S. Naval Reserve, and "is not recommended for reenlistment," by reason of certain "disqualifying defects," consisting of compound, comminuted fractures of the tibia and fibula of the right leg, and lacerations and torn muscles of the lower right forearm, and multiple lacerations of the entire body. Appellants' main objection to the introduction of this document seems to be that it was hearsay, although they also argue that the element of damage involved—mental anguish—was not here admissible. Both contentions lack merit.

Since the decision of the Supreme Court in *Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499, 513 [111 P. 534, 139 Am.St.Rep. 135, 31 L.R.A.N.S. 559], where the subject is exhaustively discussed, it has been well settled that in personal injury cases "mental worry, distress, grief, mortification, where they are shown to exist, are properly component elements of that mental suffering for which the law entitles the injured party to redress in monetary damages." (See, also, *Graham* v. *Yellow Cab Co.*, 125 Cal.App. 141 [13 P.2d 773]; *May* v. *Farrell*, 94 Cal.App. 703 [271 P. 789]; *Bethurum* v. *Krumm*, 109 Cal.App. 5 [292 P. 287].) The only case cited by appellants on this point is *Steinberger* v. *California Electric etc. Co.*, 176 Cal. 386 [168 P. 570]. All that case held was that the Merrill case, *supra*, did not overrule the well settled rule that evidence of plaintiff's poverty is not admissible in personal injury actions.

So far as the contention that the certificate was inadmissible because of the hearsay rule is concerned, it is also without merit. No objection was made to the certificate on the ground that it was not properly authenticated. Aside from materiality, the sole objection was that the certificate was hearsay. Under the Uniform Business Records as Evi-

dence Act passed in 1941 and incorporated in §§1953e to 1953h of the Code of Civil Procedure, the document was admissible. (*Loper* v. *Morrison,* 23 Cal.2d 600 [145 P.2d 1].)

The judgment appealed from is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.