[Crim. No. 6261.   Second Dist., Div. One.   Dec. 16, 1958.]

THE PEOPLE, Respondent, v. VERNON EUGENE ASHLEY, Appellant.

[Crim. No. 6262.   Second Dist., Div. One.   Dec. 16, 1958.]

THE PEOPLE, Respondent, v. ROBERT L. CHANES et al., Defendants; VERNON E. ASHLEY, Appellant.

Vernon Eugene Ashley, in pro. per., Henry M. Umann, under appointment by the District Court of Appeal, and Umann & Marks for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

FOURT, J.—This is an appeal from the "decision" and a judgment of conviction in, and "sentence" for, a violation of Penal Code, section 211 (robbery), and an appeal from the "decision" and a judgment of conviction and "sentence" for a violation of Penal Code, section 459 (burglary).

An information was filed in Los Angeles County on December 17, 1957, wherein the defendant was charged with robbery. The defendant was accused of taking $5.00 by means of force and fear from the person of Irving Edward Ludy on or about November 27, 1957, in Los Angeles County. The defendant was also charged with a prior felony conviction of burglary on May 23, 1955, in Los Angeles County. On December 27, 1957, the defendant pleaded not guilty and denied the prior conviction. On February 10, 1958, by stipulation, the cause was submitted on the transcript of the testimony taken at the preliminary hearing. Proof of the prior conviction was introduced into evidence and the court found the defendant guilty as charged, fixed the crime as robbery in the second degree and found the prior conviction to be true. The defendant was sentenced to prison upon the robbery conviction, and at the same time the defendant's probation was revoked on his prior burglary conviction and he was sentenced on that offense, the two sentences to run concurrently.

A résumé of the facts is as follows: Irving Ludy had a paper route in Hawthorne, and on the afternoon of November 27, 1957, was making collections from some of his customers. A car with three persons in it, namely the defendant and two boys, pulled up alongside of Ludy. One of the boys in the car asked Ludy if he, Ludy, would loan him some money, and

Ludy replied that he would not. One of the boys in the automobile then stated that he would have to take the money away from Ludy, and the two boys got out of the car, and after Ludy had put up a fight and resistance the boys took Ludy's wallet which he said contained $5.00 or $6.00 in bills. The third person in the automobile, the defendant, remained in the driver's seat thereof. After the two boys got back into the automobile the driver and the two boys drove away from the scene of the crime. When the boys got into the car they told the defendant that they had taken the money from the Ludy boy. They then divided the money—$2.00 to Gibson, $2.00 to Smith and $1.00 to the defendant—and then threw the wallet out of the car window.

The two boys who took the wallet from Ludy were Russell Smith, aged 15, and James Gibson, aged 14. Each of these boys testified at the preliminary hearing. Their testimony, in effect, was that on the day in question the defendant had picked them up at Gibson's house and had driven away with them in his 1957 or 1958 Chevrolet. They drove to the vicinity of the 1500 block on Washington Avenue, where they saw Ludy. Certain questions were put to Gibson, and he gave answers, as follows:

"Q. Well, what happened—who saw the paper boy and what was said? A. Well, Russell and I saw him first and said, 'There is the paper boy,' and Vern (the defendant) said, 'Yes,' and we saw his money.

"Q. And did you tell Ashley (the defendant) to stop the vehicle? A. No, sir.

"Q. He stopped it himself, is that right? A. Yes, sir."

On cross-examination of Gibson, the following occurred:

"Jim, do you know of any reason why you or Russell or anybody else would say, 'There is the paper boy'? A. Yes, sir.

"Q. What was the reason? A. Well, he was slashing his money around, he had it out in the open."

At the police station two days later, the defendant stated in the presence of Smith, Gibson and a juvenile officer the following (as related by the officer):

"I asked the Defendant what part he took in this robbery, and he replied that he was the notorious man wanted for driving the getaway car. That he had obtained—that the whole thing was done in fun. That, for $2.00 he wouldn't commit a robbery that would probably give him 5 to 20 years."

The defendant testified in his own behalf and admitted that

he drove the boys in his car on the date at the time in question; that one of the boys wanted to borrow $1.00 from the paper boy; that he did not see the boys shove the Ludy boy around; that he was not paying any attention to what was going on outside of the car, he being preoccupied with thoughts of other things. Further, he stated that he never saw the wallet and that he did not get any of the money. He also denied that he made any statement to the officer as heretofore related.

The defendant now contends (1) that the evidence is insufficient to sustain the conviction as a matter of law, and (2) that the court improperly limited cross-examination.

There is no question that the Ludy boy was robbed. In a case strikingly similar to the present situation, namely *People* v. *Jaggers*, 120 Cal.App. 733, at page 735 [8 P.2d 206], it was appropriately stated:

". . . Appellant's statement that he did not know that a crime was to be committed is not sufficient to constitute irrebuttable proof of such fact. 'Few criminals would ever be convicted if their explanations were accepted as gospel truth.' (Citing cases.)"

The trial judge obviously did not believe that the defendant was telling the truth when he testified, and the judge apparently did believe the officers and the two boys. In fact the judge even stated at the time the matter was submitted to him the following:

"THE COURT: I should just like to make this comment for the benefit of the defendant, that this Court does not park its intelligence in chambers before it takes the bench. After all is said and done it is ridiculous to expect the Court as the trier of fact to believe the story the defendant told on the stand. He seems to want to make a big joke out of the whole thing. It is anything but a joke. A man his age should be protecting juveniles from getting into trouble instead of encouraging them to get into trouble.

"The Court adjudges the defendant guilty and fixes the degree of the crime as robbery in the second degree, and the Court finds the prior conviction alleged to be true.

"MR. MOORE [Deputy Public Defender]: We will waive time for sentence and ask permission to file an application for probation.

"THE COURT: I have read the entire file in this matter, Mr. Moore.

"I am going to say this, this defendant will have to be much

more persuasive this time to get probation than he was the last time. He was full of good intentions at the original hearing, the violation hearing, but he either hasn't the will power or the desire to be a good citizen.

"As I stated before, there is no excuse for encouraging juveniles to get into trouble."

The questions of fact involved in this case were resolved against the defendant upon substantial evidence, and it is not our province to upset any such correct findings. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) There was ample evidence to convince any reasonable person that the defendant had knowledge of the wrongful intentions of the two boys, both before and during the time the robbery was committed. The defendant stopped his automobile without being told to do so when they saw the Ludy boy and his money. At the very least, the defendant knowingly participated in one of the elements of robbery, namely asportation.

". . . the perpetration of a robbery is not completed the moment the stolen property is in the possession of the robbers. Robbery, a combination of the crime of assault with that of larceny, includes, as does larceny, the element of asportation, and this taking away is a transaction which continues as the perpetrators depart from the place where the property was seized." (*People* v. *Raucho,* 8 Cal.App.2d 655, 664 [47 P.2d 1108].) All participants in a robbery are chargeable as principals and are equally guilty. (*People* v. *Best,* 43 Cal.App.2d 100, 105 [110 P.2d 504].)

Referring now to the defendant's second contention. In the cross-examination of Russell Smith, one of the boys who participated in the taking of Ludy's money, counsel asked if he had discussed his testimony with any law enforcement officer. The witness answered yes. Thereafter the following occurred:

"Q. Have you discussed with any law enforcement officer or have they discussed with you your testimony here today. A. Yes.

"Q. Did anyone tell you if you testified that they would not file any criminal proceedings against you? A. No.

"Q. Did they say that you would remain in the Juvenile Court? A. Yes.

"Q. And when did they say that, Russell? A. On Saturday when Mr. Richard, the Juvenile Officer, picked me up and took me down to the Police Station.

"Q. And what was that conversation anyway, Russell?

"Mr. Antram: [Deputy District Attorney]: To which I am going to object as improper cross-examination.

"The Court: The objection will be sustained.

"Mr. Littlefield: I think it goes to bias, your Honor, as to what this witness was promised in giving his testimony. I think it would be material on that ground.

"Mr. Antram: I will offer the further objection on the ground it has already been asked and answered.

"The Court: I am going to sustain the objection.

"Q. By Mr. Littlefield: Is that the only thing that they told you, Russell? That you would be in Juvenile Court and would not be prosecuted, was that the only thing? A. No, he said that I would have to go to Juvenile Court and have a hearing.

"Q. Did he mention you testifying in this case? A. Yes, he said I probably would have to.

"Q. Michael Gaffney was not there at the time, is that right? A. That is right.

"Mr. Littlefield: I have nothing further.

"Mr. Antram: You may step down. People now call James Gibson."

A reading of the questions and answers prior to the quoted parts of the testimony herein set forth shows that, in effect, the question had been asked and answered. We are of the opinion that counsel was not unduly curtailed and the trial judge was well within the bounds of sound discretion in limiting the cross-examination. (*People* v. *Smith*, 26 Cal.2d 854, 858 [161 P.2d 941].) Furthermore, counsel went into the same line of questioning without objection in his cross-examination of the Gibson boy and the juvenile officer.

In *People* v. *Barragan*, 163 Cal.App.2d 625 at page 629 [329 P.2d 733], it is said:

". . . It is the duty of the trial judge to restrict the cross-examination of witnesses to reasonable limitations. (*People* v. *Spreckels*, 125 Cal.App.2d 507, 514 [270 P.2d 513].) The scope of the cross-examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. (*People* v. *Apodaca*, 132 Cal.App.2d 340, 341 [282 P.2d 182].) . . . ."

The judgment in the robbery case (2d Criminal No. 6261) is affirmed.

The robbery conviction justified the revocation of the de-

fendant's probation in the burglary case (2d Criminal No. 6262) and the sentencing of the defendant on the prior burglary conviction. (*People* v. *Robinson,* 43 Cal.2d 143, 146 [271 P.2d 872].)

The judgment in the burglary case (2d Criminal No. 6262) is affirmed.

The purported appeals from the "decision" of the court, and the "sentence" are, and each of them is dismissed in each case.

White, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1959.