[Civ. No. 7013. Fourth Dist. Jan. 30, 1963.]

EDWARD GARCIA, Plaintiff and Appellant, v. COR-
NELIUS H. HOFFMAN et al., Defendants and Re-
spondents.

Wolford, Johnson, Pike & Covell and George Pike for Plaintiff and Appellant.

King & Mussell and John Lewis King for Defendants and Respondents.

COUGHLIN, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant in an action to recover damages for injuries resulting from an intersection collision between automobiles driven by them respectively.

As grounds for reversal, the plaintiff contends that the court erred in rejecting demonstration evidence and striking part of the testimony of an expert witness, elicited on cross-examination, which related to the subject of the demonstration; also erred in refusing to give certain instructions; and that the evidence is not sufficient to establish the defense of contributory negligence.

The subject collision occurred in a rural area in Riverside County, at the intersection of River Road and Pulaski Street. On December 15, 1958, prior to the collision, Cornelius Edward Hoffman, hereinafter referred to as the defendant, was driving easterly on River Road and the plaintiff was driving northerly on Pulaski. At the place in question River Road is a 20-foot paved highway with a 9-foot dirt shoulder on the north and a 7-foot dirt shoulder on the south; for the purpose at hand, may be described as extending in an east-west direction; and as it approaches the subject intersection is downgrade with varying elevations. Pulaski Street to the north of River Road is a public street 24 feet in width, of which 18 feet is paved; and to the south of River Road is a 10-foot private, dirt roadway used by the public, which, at point of entry onto River Road is 2 feet below grade. There is a stop sign on Pulaski as it enters the north side of River Road, but no stop sign thereon as it enters the south side of

that road. As a motorist driving easterly on River Road approaches its intersection with Pulaski, he goes down a rather steep grade for more than 1,000 feet, during which time he can observe the traffic to the south on Pulaski; enters a depression or dip the crests of which are approximately 700 feet apart; is unable to see the intersection and its approaches during the time he is in this dip; then goes over a rise and onto another downgrade; and, at a point about 288 feet from the intersection, his view thereof is restored and thereafter remains unobstructed. A driver going northerly along that part of Pulaski Street south of River Road is able to see traffic on the latter as it approaches the dip, and also from the time it leaves the 288 foot point on down to the intersection.

At the time in question, the defendant was traveling easterly on River Road at a speed variously estimated between 50 and 80 miles per hour; came out of the dip and immediately applied his brakes when, at the 288-foot point he saw the plaintiff, who, he testified, was then approximately 15 feet south of and approaching the intersection on Pulaski. The automobile that the defendant was driving left skid marks of varying lengths on the pavement, traveled from the southerly half of River Road, which was his right half of the roadway, into the northerly half thereof; went into a broadside; turned over; and collided with the automobile driven by the plaintiff, the front end of which was in the northerly half of River Road at a point approximately 14 feet west of Pulaski Street.

### Errors Re Demonstration Evidence and Order Granting Motion to Strike

Each side introduced expert testimony to establish the defendant's rate of speed, based upon the tire marks which his automobile left on the pavement. The right rear wheel thereof left a tire mark 217 feet in length; the right front, a mark 79 feet in length; the left rear, a mark 72 feet in length. These marks varied in composition. Some, and parts of some, appeared to be made by locked wheels; others, or parts thereof, appeared to be made by wheels in motion; some were made by the automobile as it was going into or was in a broadside, and others were made before that time; a part or all of some of them were comparatively straight, while a part of some is curved; parts of the two right wheel marks were south of the center of the roadway and the remaining parts thereof were north of the center; those made by the two left wheels were all north of the center of the roadway; and, at one point the

mark made by the right front wheel was intersected by that made by the left rear wheel.

Upon objection by the defendant, the plaintiff was denied the right to place in evidence the results of a demonstration which, among other things, would show that the driver of an automobile of the kind and model driven by the defendant, traveling easterly on River Road at 65 miles per hour down and through the dip and up and over the rise at the east end thereof, stopped within 214 feet immediately after sighting another automobile 15 feet south of the intersection on Pulaski Street and, in doing so, left a 166-foot locked right wheel skid mark. The demonstration in question also included similar tests at speeds less than 65 miles per hour, and without leaving any skid marks.

Subsequently, the plaintiff elicited from a defense expert witness, on cross-examination, the opinion that an automobile, such as the one in question, going 65 miles per hour over the subject highway would require 235 feet of braking distance, including one locked rear wheel, to bring it to a stop; that, assuming such circumstances and also assuming that the locked wheel was the right rear wheel, it was not possible for such automobile "to come to a complete stop in 166 feet of skidding distance"; and that, including reaction time in the foregoing examples, the automobile in question could not be brought to a stop within 214 feet. The expert also testified that the speedometer reading of an automobile does not relate its true speed for the purpose of making tests to determine speed from braking distances, and the ability to stop upon applying brakes over a designated distance at a designated speed. The defendant objected to the cross-examination which elicited the foregoing information upon the ground that it was immaterial to the issue at hand, and was being conducted for the purpose of laying a foundation that would authorize the introduction of the demonstration evidence to which the court previously had sustained an objection. The trial court overruled the defendant's objection, but reserved to him the right subsequently to move to strike. Thereafter the defendant made such a motion, urging the grounds advanced in his original objection, and the court granted the same. Subsequently, the plaintiff again offered to prove the results of the braking tests which heretofore had been outlined. This offer was rejected.

The plaintiff cites the refusal of the court to permit him to

introduce the results of such tests, and the order striking the foregoing cross-examination, as prejudicial error.

█ █ Testimony relating the results of experiments concerning a disputed material fact should be admitted only if the conditions under which the experiments were made are substantially identical to those out of which the disputed fact arose (*Beresford* v. *Pacific Gas & Elec. Co.*, 45 Cal.2d 738, 748 [290 P.2d 498, 54 A.L.R.2d 910] ; *People* v. *Ely*, 203 Cal. 628, 632-633 [265 P. 818]), should be of that character which will clarify rather than confuse the issue at hand (*People* v. *Ely, supra*, 203 Cal. 628, 633; *Martin* v. *Angel City Baseball Assn.*, 3 Cal.App.2d 586, 590 [40 P.2d 287] ) ; should not be admitted if they predominately involve a consideration of collateral issues (*People* v. *Ely, supra*, 203 Cal. 628, 633; *Braly* v. *Midvalley Chemical Co.*, 192 Cal.App.2d 369, 380 [13 Cal. Rptr. 366] ) ; and the determination of these factors is a matter largely within the discretion of the trial court, whose ruling will not be interfered with on appeal in the absence of a clear showing of an abuse of that discretion. (*Grupe* v. *Glick*, 26 Cal.2d 680, 685 [160 P.2d 832] ; *Buratti* v. *Phetteplace*, 196 Cal.App.2d 303, 309 [16 Cal.Rptr. 500] ; *People* v. *King*, 104 Cal.App.2d 298, 307 [231 P.2d 156] ; *Martin* v. *Angel City Baseball Assn., supra*, 3 Cal.App.2d 586, 590.)

█ In the case at bar, the conditions at the time of the accident and those at the time of the subject experiment presented many variables. After the application of brakes, defendant's automobile laid down four skid marks of varying lengths and types; went broadside; turned to the left; and its wheels for a part of the time were not engaged in an effective braking operation. On the other hand, the automobile used in the experiment laid down no skid marks, except on one occasion, when one wheel did so; did not go into a broadside; went in a straight line; and its four wheels were engaged in a maximum braking operation at all times. The similarity between the two braking systems, although both were described as "good," was not effectively shown in the light of common experience which has demonstrated imperfections in the synchronization of brakes that appear to be "good" under normal driving conditions, but are woefully out of balance when subjected to a sudden, forceful application at high speed. Although there were three people in each of the subject automobiles, the evidence does not indicate whether they maintained similar positions therein during the course of their respective rides. There was good reason for the occu-

pants of defendant's automobile to have had their position changed in the course of their ride because of the unexpected application of brakes and the turn to the left, while no such reason existed with respect to the occupants in the experimental automobile. A substantial difference in constancy of braking application must have existed between that exercised by the defendant, who was met with a sudden emergency, whose car was turning to the left, and who was going into a broadside, as compared with that of the driver of the experimental automobile who was not subjected to these demands.

Applying the rules heretofore noted to the evidence at hand, we conclude that the trial court did not abuse its discretion in refusing to permit the plaintiff to introduce testimony respecting the results of the subject experiments as a part of his case in chief.

The offer to introduce such testimony was renewed upon rebuttal, which followed the heretofore related cross-examination of the defendant's expert. The plaintiff urges that he should have been permitted to introduce the results of his experiment to contradict an opinion of that expert, and thus impeach his testimony. The opinion in question was elicited on cross-examination and related to the distance in which an automobile of the type driven by the defendant could be stopped while traveling at a designated speed. The opinion given by the expert on direct examination concerned the speed of an automobile leaving skid marks of the length and type laid down by the defendant's automobile. The cross-examination which the court indulged and thereafter struck from the record, the apparent purpose of which was to elicit an opinion that might be contradicted by experimental testimony, when considered with the latter testimony, would have tended to confuse rather than clarify the issue at hand by distracting the attention of the triers of fact from that issue and submitting to them a great variety of collateral issues incident to the experiment. (See *City of Los Angeles* v. *Morris,* 74 Cal.App. 473, 483 [241 P. 409].) ▉ The scope of cross-examination is committed to the sound discretion of the trial court, and its ruling thereon will not be disturbed on appeal in the absence of a clear showing of abuse of that discretion. (*People* v. *Jordan,* 169 Cal.App.2d 727, 729 [337 P.2d 912] ; *People* v. *Ashley,* 166 Cal.App.2d 249, 254 [332 P.2d 758] ; *People* v. *Barragan,* 163 Cal.App.2d 625, 629 [329 P.2d 733].) ▉ A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be

contradicted (*People* v. *Atchley*, 53 Cal.2d 160, 172 [346 P.2d 764] ; *People* v. *McKeller*, 53 Cal. 65, 66 ; *People* v. *Chin Mook Sow*, 51 Cal. 597, 600 ; Witkin, Cal. Evidence, § 673) ; nor may he introduce evidence to impeach a witness who has testified about such matters. (*People* v. *Golden*, 55 Cal.2d 358, 372 [11 Cal.Rptr. 80, 359 P.2d 448] ; *People* v. *Rodriguez*, 134 Cal. 140, 142 [66 P. 174].) In the instant case there was no showing of abuse of discretion in the premises ; the plaintiff's contention to the contrary is without merit.

### ERRORS RE REFUSAL TO GIVE INSTRUCTIONS

The plaintiff requested the court to instruct the jury : (1) In the language of former section 544, subdivision (a) of the Vehicle Code, now section 22107 of that code, which was included in one of its proposed instructions ; (2) as stated in BAJI No. 138.1 ; and (3) on the doctrine of last clear chance.

▋ The plaintiff submitted to the court and requested the following instruction incorporating the provisions of former Vehicle Code sections 525, and 544, subdivision (a), viz :

"You are instructed that at the time of this accident the Vehicle Code of California provided :

"Sec. 525. Driving on Right Half of Roadway. Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway.

"Sec. 544 (a). No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety (and then only after the giving of an appropriate signal in the manner provided for herein in the event any other vehicle may be affected by such movement.)"

The instruction also included a definition of the term "reasonable safety" as used in the latter quoted code section. The court modified the proposed instruction by striking therefrom the provisions relating to section 544, subdivision (a), and gave the instruction as modified.

Although the evidence indicated that the defendant's automobile was out of control and crossed into the northerly half of River Road without his volition, there also is evidence from which the jury could have concluded that the change from one half of the roadway to the other was effected by his voluntary action. The first observable skid mark laid down by the left front tire of the defendant's automobile commenced 96 feet before impact and was then a substantial dis-

tance into the north half of River Road. This fact indicates that the movement into that lane was commenced a considerable distance west of that point.

Clearly, the code provisions of section 525 rather than those of section 544, subdivision (a) prescribed the statutory duty, if any, applicable to the facts in this case. Assuming the presence of the plaintiff's automobile in the northerly half of the roadway at the time of the subject collision, and assuming also that the collision would not have occurred except for the presence of the defendant's automobile in that part of the roadway at that time, the breach of duty, if any, which caused that collision arose from the fact that the latter automobile then was being driven on the northerly, or defendant's left half of the roadway, and not from the fact that his automobile may have been moved into the left half of the roadway without his first ascertaining whether such movement could have been made with safety. Any breach of the defendant's duty with respect to the manner of movement into the northerly half of the roadway, under the circumstances of this case, was not related to the collision. If he was negligent in driving his automobile on the left half of the roadway, whether or not he ascertained that the movement which brought him into that half of the roadway could be made with reasonable safety was immaterial to the issue respecting the cause of the ensuing collision.

The modification of the requested instruction was proper.

■ The plaintiff also contends that the court erred in refusing to give a requested instruction identified as BAJI No. 138.1, but presents neither argument nor citation of authority in support of his position, and offers no showing of prejudice. Under such circumstances, his contention must be deemed to have been abandoned and requires no further comment. (*Guillory* v. *Godfrey,* 134 Cal.App.2d 628, 634 [286 P.2d 474].) Furthermore, under the evidence in this case, the refusal to give the instruction as proposed, because of its unlimited application, was proper. (*Carlson* v. *Shewalter,* 110 Cal.App.2d 655, 658 [243 P.2d 549] ; *Angier* v. *Bruck,* 56 Cal.App.2d 55, 58 [131 P.2d 876].)

The plaintiff further contends that the court erred in refusing to give instructions on the last clear chance doctrine which he identified in his request therefor as BAJI No. 205.

"The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own

negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.'' (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432]; Accord: *Hildebrand* v. *Los Angeles Junction Ry. Co.*, 53 Cal.2d 826, 830 [3 Cal.Rptr. 313, 350 P.2d 65].)

The plaintiff claims that there is substantial evidence in the instant case which would support a finding that the defendant had the last clear chance to avoid the subject accident by the exercise of ordinary care because he could have proceeded straight ahead, in the south half of River Road, and the accident would not have occurred; that he failed to exercise this last clear chance; and that the ensuing accident was a proximate result of such failure.

Stated fairly and in substance, the defendant testified that as he came out of the dip he saw the plaintiff 10 or 15 feet south of River Road on Pulaski, ''moving steadily along''; that he ''slammed'' on his brakes after he saw that plaintiff's automobile was not going to stop, although he also testified that: ''It seemed to me it was going to stop''; that when the plaintiff's automobile was pulling into River Road he, the defendant, knew that there was danger of an accident and pulled to the left to miss it; and that his automobile went into a broadside. Parenthetically, it should be noted that there is a conflict in the defendant's testimony as to whether or not he voluntarily turned his automobile to the left. At one time in the course of his examination he testified that he did not remember turning to the left to ''dodge'' the plaintiff's car.

The plaintiff claims that the evidence at hand, including the foregoing testimony, was sufficient to establish that, after coming out of the dip, the defendant knew that he, the plaintiff, was in a position of danger and further knew, or in the exercise of ordinary care should have known, that he was unable to escape therefrom.

540

■ The last clear chance doctrine does not apply unless a plaintiff is in a position of danger as the result of his own negligence, and cannot escape therefrom by the exercise of ordinary care, and the defendant knows that the plaintiff is in such position of danger, and also knows, or should know, that the plaintiff cannot escape therefrom. (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 740, 743; *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1].) ■ The time during which a defendant must exercise a last clear chance commences only when he "has both (1) actual knowledge of the injured person's 'position of danger' and (2) actual or constructive knowledge that the injured person 'cannot escape from such situation.' " (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 740-741.)

■ If, in the instant case, as contended by the plaintiff, the defendant's last clear chance to avoid the subject accident became such at the time the latter turned his automobile to the left instead of driving straight ahead, under the rules heretofore noted, the subject doctrine was applicable only if the plaintiff then was in a position of danger from which, because of his negligence, he was unable to escape by the exercise of ordinary care. Such position of danger existed only if the plaintiff then was in or approaching the southerly half of River Road, or, stated otherwise, only because he then was in the path of the defendant's oncoming automobile. There is evidence which would support such a conclusion. Assuming that the defendant then knew, or should have known, that the plaintiff could not escape from that position of danger, which assumption is essential to an application of the doctrine although contradicted by subsequent events, the defendant, by turning to his left "to miss" the plaintiff, thereupon exercised what then appeared to him to be a last clear chance to avoid an impending accident. Thereafter, the plaintiff, by moving into the northerly half of the roadway, placed himself in another position of danger, but when this occurred the defendant did not then or thereafter have a clear chance to avoid the accident which followed. The doctrine applies only to those instances where the chance offered the defendant to avoid the accident by the exercise of ordinary care is a *clear* chance. (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 738; *Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 488; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 293 [246 P.2d 663];

*Di Sandro* v. *Griffith,* 188 Cal.App.2d 428, 440 [10 Cal.Rptr. 595], and cases there cited.)

''The underlying basis for the application of this doctrine, which permits an injured person to recover despite his continuing and contributory negligence, is that defendant was afforded a *last* chance and a *clear* chance to avoid the accident *after* defendant had discovered that plaintiff was in a helpless situation. It is based upon the humanitarian concept that the fault of the injured party should not relieve the erring defendant of his liability if defendant is afforded such last clear chance to avoid the accident after actually discovering that it is too late for the injured party to avail himself of any similar chance.'' (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 487-488.)

The evidence before us does not justify an application of the last clear chance doctrine to the case at bar either by virtue of the reason for its existence, or when measured by its definitive formula which requires proof upon all of the several essential elements heretofore noted. (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 486, 487.)

The plaintiff's contention that the doctrine applied to the instant case and that the defendant had the last clear chance to avoid the subject accident by remaining in the southerly half of River Road rather than turning into the northerly half thereof is predicated upon a position of danger in which the plaintiff placed himself after the time he asserts the defendant was afforded the aforesaid last clear chance to avoid the accident and, thus, fallaciously applies the doctrine to a state of facts existent after, instead of at, the time when the defendant should have done that which the plaintiff claims was the former's last clear chance to avoid the accident.

### RE CONTRIBUTORY NEGLIGENCE

On the issue of contributory negligence the plaintiff takes inconsistent positions; contends that the evidence required instructions upon the doctrine of last clear chance, which is applicable only when a plaintiff is contributorily negligent (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 486) ; and concurrently contends that the evidence is not sufficient to support a finding that he was not contributorily negligent. Although not clearly expressed in his brief, it would seem to be the plaintiff's position that the issue of contributory negligence should not have been submitted to the jury because there was no substantial evidence which would

542

support a finding against him on that issue. Such a position is without merit. The evidence strongly supports the conclusion that the plaintiff, as he approached River Road, knew that an automobile coming over that road from his left would be hidden from view while in the dip; was well acquainted with the topography of that highway; without looking to his left proceeded onto and across River Road; failed to see that which was in plain sight at least from the time he started onto the pavement of River Road until the time of collision; and that his actions did not comport with the care required by a reasonably prudent man under the circumstances. The conclusion aforesaid respecting the observation period available to the plaintiff before the accident is predicated upon speed, time, and space factors supplied by substantial evidence; would follow even though the jury believed that the defendant was going 80 miles per hour and the plaintiff, as he testified, was going 10 miles per hour; and would include an extended period if the jury believed that the defendant was going at a lesser speed or the plaintiff was going at a greater speed. The amount of care required of the plaintiff to ascertain the probable approach and position of an oncoming automobile, in order that he might satisfy his obligation to exercise that degree of care required of a reasonably prudent person under the circumstances, was a question for jury determination.

 "Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury." (*Johnson* v. *Southern Pacific R. R. Co.*, 154 Cal. 285, 295 [97 P. 520]; *McBride* v. *Atchison, Topeka & S. F. Ry. Co.*, 44 Cal.2d 113, 118 [279 P.2d 966]; *Bankston* v. *Laux*, 202 Cal. App.2d 616, 620 [20 Cal.Rptr. 874].)

The judgment is affirmed.

Griffin, P. J., concurred.