[Civ. No. 31624. Second Dist., Div. Three. Nov. 21, 1968.]

RALPH ANDREWS, Plaintiff and Appellant, v. BARKER BROTHERS CORPORATION et al., Defendants and Respondents.

531

George O. West and William O'Neil Carlisle for Plaintiff and Appellant.

Betts & Loomis, Ingall W. Bull, Jr., Murchison, Cumming, Baker & Velpmen, John Baker and Henry F. Walker for Defendants and Respondents.

SHINN, J.*—Plaintiff Andrews appeals from an adverse judgment in an action for personal injuries sustained when a chair in which he had just seated himself collapsed under his weight. The defendants are Barker Brothers Corporation and Virtue Brothers Manufacturing Company, a corporation.

The complaint was in two causes of action; in the first it was alleged that Barker Brothers (Barker) operated a furniture store; plaintiff was in the Hollywood store for the purpose of buying furniture; there was a chair made of steel tubing and imitation leather on the sales floor; plaintiff sat upon the chair and it collapsed under him; he was thrown to the floor and sustained injuries; the chair had been constructed or assembled in an improper manner and was dangerous for its intended use; Barker was negligent in keeping the chair upon the floor for sale to customers in that it knew or in the exercise of reasonable care should have known that the chair was dangerous for its intended use.

It was alleged in the second cause of action that the chair

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

was manufactured by Virtue Brothers (Virtue) for sale to retail dealers for eventual sale to the public; it was manufactured and assembled in a negligent manner in that it would not support the weight of a person sitting thereon and was incapable of safe use for said purpose; the chair was sold to Barker, was placed on the sales floor; plaintiff, a customer, sat upon the chair; it collapsed and plaintiff was thrown to the floor. Virtue answered, denying negligence and pleading contributory negligence of plaintiff and assumption of risk. Barker answered, denying negligence and pleading the defense of contributory negligence. Barker filed a cross-complaint against Virtue alleging it had purchased the chair from Virtue, the chair had been warranted by Virtue and Virtue had executed a contract to indemnify Barker against the loss occasioned by injury to any person resulting from any defect in or failure of the chair. The prayer was for indemnification under the contract.

·After the presentation of plaintiff's evidence the court granted the motion of Virtue for a judgment of nonsuit; The case against Barker was submitted to a jury, which rendered a verdict for the defendant.

We consider first the appeal as it relates to the judgment of nonsuit in favor of Virtue.

The points on appeal are (a) there was sufficient evidence to invoke the doctrine of res ipsa loquitur against Virtue, and (b) there was sufficient evidence of Virtue's active negligence to go to the jury; also, for the above reasons plaintiff's motion for a new trial should have been granted.

The structure of the chair was sufficiently described by witnesses, and photographs of it after it was collapsed were in evidence. The frame is made of hollow $\frac{3}{4}$-inch 20-gauge steel tubing sustaining a flat seat; the front legs are 14 inches apart at the top and incline forward and sidewise to the floor. The rear legs are of tubing bent so the legs incline backward at an angle of 108 degrees to the vertical and outward to the floor. Thus the legs are straddled in all four directions and give the chair stability. There was uncontradicted evidence that the chair would sustain a weight of 500 pounds. There was no evidence of fault in the design of the chair. In the manufacturing process the tubing is bent in dies, the chair is assembled and is tested to see whether the four legs rest solidly on the floor. The rear legs may be one or two degrees off from 108 degrees and, if so, the error is corrected by "tapping" them with a small hammer. After final inspection the chairs are shipped in pairs in strong cartons. The chair in

question was a part of a dinette set of four chairs and a matching table. Barker had had the set for 60 to 90 days. The set had been on Barker's sale floor for sale, and inspection by customers was not restricted.

After plaintiff's accident the chair was taken to the office of Mr. Demirjian who was manager of Barker's Hollywood store. The chair was photographed, remained in the office of Mr. Demirjian for 8 months and was not seen again by Mr. Demirjian.

The chair was not produced at the trial. Photographs of it after it collapsed are in the record. Mr. Manning, Virtue's chief product engineer, testified that the left rear leg was bent forward 30 degrees and outward 3 or 4 inches from its original position.

Plaintiff testified he was in the store as a business invitee and prospective buyer; he looked at the chair and saw nothing wrong with it; he sat upon it in a normal manner.

## VIRTUE

With respect to the liability of Virtue appellant contends that his evidence was sufficient to render applicable the doctrine of res ipsa loquitur; under that doctrine he made out a case for the jury but the court denied him the benefit of the doctrine. In stating the rule he quotes from *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1256], as follows: ''(1) The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'' The first condition was met by the circumstances of the accident; the third condition was met by the uncontradicted testimony of Andrews that he sat on the chair in a normal manner. Appellant argues that the second condition also was met.

In ruling upon the motion of Virtue for a nonsuit the court declined to apply the res ipsa doctrine to the case against Virtue. The court stated: ''THE COURT: . . . I'm saying that when they delivered it to Barker Brothers and the latter put it on the sales floor for the period, it was exposed to acts of third persons. If this were not so and Barker had retained the chair in the warehouse, even if unpacked, Virtue might be said to have retained at least joint control.

''But when they delivered it to Barker Brothers, they lost control of it under the evidence in this case. It was in a sealed

534

package, taken out—at least the two chairs were fitted in, and Barker Brothers lifted it out and put in on the floor. . . .

"Well, I don't see res ipsa applying in this case. So ruling, is there any jury question left that can be properly presented to the jury?"

Appellant interprets the court's remark as holding that res ipsa loquitur could not be applied against Virtue because it did not have control of the chair at the time of the accident. The court did not say this. The court was merely pointing out that when the chair was delivered to Barker it was exposed to acts of third persons. Appellant correctly says that the ele-, ment of control relates to the time of the occurrence of the condition which was the cause of the accident. Appellant argues that it could be inferred that Virtue was negligent in manufacturing the chair, that Barker negligently failed to detect and eliminate the danger and that res ipsa loquitur may be applied to both where the circumstances are such as to show a probability that all of them were negligent.

Appellant cites and relies upon the rule declared in *Ybarra* v. *Spangard, supra,* 25 Cal.2d 486, and *Cavero* v. *Franklin General Benevolent Society,* 36 Cal.2d 301 [223 P.2d 471], that res ipsa may be invoked against all defendants who at the time of the injury had any control of the body or instrumentalities which might have been the cause of it. Those were cases in which the respective plaintiffs received unusual injuries while under anesthesia during an operation. The application of the doctrine there approved cannot be extended to cover two defendants when the only fact proved by the plaintiff is that at different times each defendant had possession of the instrument that caused the injury. If there was damage to the chair it could have been caused by Virtue or by Barker, but it did not occur while both had possession or control of it.

 The applicable rule is that where it is sought to invoke the res ipsa doctrine against one who had passed on to another possession and control of the instrumentality which caused the damage, the plaintiff must produce evidence which is sufficient to show that the instrumentality was not mishandled or its condition otherwise changed after control was relinquished by the person to whom the doctrine is sought to be applied. (*Burr* v. *Sherman Williams Co.,* 42 Cal.2d 682 [268 P.2d 1041].) The rule was fully stated with citation of numerous authorities in *Trust* v. *Arden Farms Co.,* 50 Cal.2d 217 [324 P.2d 583], in affirming a judgment of nonsuit.

 Appellant does not question the rule or its applica-

bility to his case against Virtue. He cites *Gherna* v. *Ford Motor Co.*, 246 Cal.App.2d 639 [55 Cal.Rptr. 94], a case in which res ipsa was held to be applicable against the manufacturer of a car and the dealer, Harper. The car caught on fire. Appellant says "plaintiff had produced sufficient evidence to take the question to the jury under *res ipsa*: plaintiff essentially proved, *as did appellant,* that nothing had been done to the automobile since its purchase from Harper which could account for the accident." (Italics added.)

There was testimony that the employees of Barker were under instructions to report any defects in or damage to merchandise which they observed, and that prior to plaintiff's accident no such report was made by a stock man, a salesman, or a maintenance man.

Realizing that in order to invoke the doctrine against Virtue he must prove that any damage to the chair was not caused after it left Virtue, appellant refers to evidence that legs of chairs which were out of line in their construction would be brought into alignment by "tapping" and says: "In addition, the assistant secretary of respondent Barker, Tom R. Wilde, testified concerning the inspections imposed by respondent Barker on merchandise received at its central warehouse and at the branch stores. These inspections, together with the evidence concerning the instructions given to the maintenance and sales personnel of respondent Barker's Hollywood store and the silence of these employees regarding the condition of the chair in question, produce a strong inference that in fact the chair remained in its manufactured condition. This inference satisfies the proviso stated in the preceding section of this brief 'that the condition of the instrumentality had not been changed after it had left the defendant's possession.' " It seems to us that the failure of Barker's employees to report any defect in the chair when it was received from Virtue or while it was located on the sales floor would be some evidence that the chair was sound rather than defective when received by Barker. But if there had been evidence that Barker's employees handled the chair with care and discovered no damage it would have indicated that if the leg was bent out of shape before Andrews sat upon it the bending occurred during the time the chair was on the sales floor. No witness testified to having knowledge of the condition of the chair when Andrews sat on it. The court ruled there was an insufficiency of evidence to show that no injury to the chair occurred after it passed from the control

of Virtue. We cannot disagree. The court did not err in refus-
ing to submit to the jury the question whether Virtue sold
and delivered to Barker a chair that was unsafe and unfit for
use.

Appellant argues that the doctrine of strict liability should
have been applied against Virtue. In the trial it was stated by
appellant that the issue as to Virtue was negligence. The judg-
ment of nonsuit in favor of Virtue was a proper one.

## BARKER

Barker says in its brief, ''Respondents took the posi-
tion that the most logical explanation for the left rear leg
being bent under the chair was that plaintiff leaned back in
the chair, forcing the front legs off of the ground and the
center of gravity of the combined man and chair outboard or
to the rear of the point where the left leg hit the floor.''

Barker requested and the court gave an instruction on con-
tributory negligence. It is contended it was error to instruct
on that defense because there was no evidence that Andrews
was negligent.

Appellant cites *Rideau* v. *Los Angeles Transit Lines,* 124
Cal.App.2d 466 [268 P.2d 772] for the rule that it is error to
instruct on contributory negligence which could only be dis-
covered in some conduct of which there is no evidence. In
*Rideau* the refusal to instruct on contributory negligence was
approved when the claim of negligence was that the plaintiff
may have turned in front of the defendant's street car, and
there was no evidence of that fact. The rule stated in *Rideau*
is elementary; it has unanimous support in the decisions and
is not questioned by Barker. The only evidence as to the man-
ner in which Andrews sat on the chair was his own testimony
and that of James Maloney, a friend of Andrews who was
present at the time. Both testified that Andrews sat upon the
chair in a normal manner and Andrews testified he did not
lean back in the chair and raise the front legs off the floor.
This testimony was not contradicted. The verdict implies that
the jury disbelieved this testimony, but a doubt that plaintiff
had succeeded in proving he was not negligent would not
excuse Barker from proving he was negligent, since the bur-
den was upon Barker to establish that defense.

Barker says that where there is evidence of contributory
negligence the court may not by refusing to instruct on the
doctrine deprive the defendant of that defense, citing *Phillips*
v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801 [13 Cal.Rptr.
401, 362 P.2d 33]. No one would question this statement. Bar-

ker then defends the instruction upon the theory that if the leg was bent before Andrews sat upon the chair he would have noticed the defect if he had exercised ordinary care. We do not believe there was evidence to justify the instruction upon that theory. Barker's argument assumes the chair leg was bent to an extent that would render it unsafe to use and that the defect was obvious. Andrews testified he drew the chair from underneath a table and looked at it. There was no evidence of what he would have seen if he had carefully examined the chair and no evidence of the degree of misalignment of the leg that would render the chair unsafe except for the testimony of Mr. Manning that a 10-degree shift would be unsafe.

Barker realized it was necessary for it to prove that plaintiff was guilty of contributory negligence and it attempted to meet its burden of proof with expert testimony. Barker produced a witness, Nass, by name, who qualified as a professional engineer, and gave expert testimony over objection. Nass testified he obtained four chairs of the design of the subject chair and experimented with them. His purpose was to determine how the left rear leg of a chair could be bent forward underneath the seat at an angle of some 30 degrees by the manner in which the chair was sat upon. He made numerous tests. In the final and decisive test he sat upon the chair, leaned the chair backward until the front legs were nine inches off the floor and the rear legs were inclined backward at an angle of 31 degrees from the vertical, then shifted his weight onto the left rear leg of the chair; the leg collapsed forward and Nass held onto a safety rope to keep from falling. The purpose of this fantastic maneuver was to provide a basis for the claim that Andrews was guilty of contributory negligence.

It is the settled rule that evidence of the results of experiments as to a disputed fact is not admissible unless the conditions of the experiment are substantially identical to those out of which the dispute arises. (*Garcia* v. *Hoffman,* 212 Cal.App.2d 530 [28 Cal.Rptr. 98].)

Admission of the testimony of Nass is assigned as error because of the absence of evidence that the chair used by Nass in his experiment was substantially the same as the subject chair. This contention cannot be sustained. Nass could not obtain an identical chair from Virtue but obtained from another source chairs proved to be of the same design and construction. The court ruled there was sufficient similar-

ity; there was no evidence of dissimilarity; the matter was within the court's discretion and the ruling was a correct one.

It is also contended that the testimony of Nass was inadmissible for the reason that it was not shown that the condition of the chair when Andrews looked at it, and the manner in which he sat on it, were substantially identical to the conditions and manner of the Nass experiment. Nass used a chair that was sound, but there was no evidence that the chair Andrews sat on was sound at that time. Nass leaned the chair back in a strange maneuver, but there was no evidence that Andrews did the same. In the absence of evidence of the identity of the conditions of Andrews' fall and the experiment of Nass it was necessary to assume as a basis for proof of the experiment that Andrews sat down on a sound chair and tipped it backward as Nass did. It was necessary to assume, in proving the experiment, that Andrews was negligent in his misuse of the chair in order to prove he was negligent, and it was therefore necessary to assume that the chair was sound, which would mean that Barker was free of negligence. If there had been evidence of those facts there would have been no need for expert testimony; no one could have doubted that Andrews was negligent.

To approve the admission of the testimony of Nass it would be necessary to expand the rules under which experimental evidence may be received so as to permit evidence of experiments when identity of conditions could only be made to appear by assuming the existence of material facts of which there was no evidence. This, of course, would completely destroy the usefulness of evidence of experiments.

Barker says the expert testimony was the most logical explanation of the accident and it was for the jury to choose between that explanation and any plaintiff might offer.

The verdict indicates that the jury accepted and relied upon this line of reasoning. Nass had demonstrated one way in which the chair leg could be collapsed and after listening to his testimony the jurors turned to Andrews for a better theory. They understood it to be their duty to determine the cause of the collapse of the chair. Andrews testified he sat in the chair in a normal manner and did not tip it backward, which was no explanation of the cause of its collapse. It was reasonable for the jury to accept the explanation of Nass since it provided the only evidence of the cause of the collapse of the chair. But Andrews' testimony was sufficient to raise the inference that Barker was negligent. The duty rested upon

Barker to produce evidence sufficient to meet that inference and the jury was so instructed. The incompetent evidence of the Nass experiment was the only evidence introduced by Barker to prove it was not negligent and that Andrews was negligent.

The court erred in giving an instruction on contributory negligence and in admitting the testimony of Nass over objection. These errors were seriously prejudicial to the case of the plaintiff; without them he would probably have fared better at the hands of the jury.

█ Plaintiff contends against Barker, as he does against Virtue, that he was entitled to the benefit of the doctrine of strict liability. The claim is made for the first time on appeal and may not be considered.

The judgment in favor of Virtue Brothers Manufacturing Company is affirmed.

The judgment in favor of Barker Brothers Corporation is reversed.

Ford, P. J., and Moss, J., concurred.

Petitions for a rehearing were denied December 20, 1968, and the opinion was modified to read as printed above. The petition of respondent Barker Brothers Corporation for a hearing by the Supreme Court was denied January 15, 1969. Traynor, C. J., was of the opinion that the petition should be granted.