[Civ. No. 22209.   First Dist., Div. Two.   Mar. 16, 1965.]

MARY A. NEUDECK, Plaintiff and Respondent, v. JAMES
V. BRANSTEN et al., Defendants and Appellants.

L. F. Haeberle, III, for Defendants and Appellants.

Richard C. Shortall for Plaintiff and Respondent.

TAYLOR, J.—Plaintiff, Mary Neudeck, filed this action for personal injuries and the wrongful death of her sister resulting from a collision with an automobile owned by defendant, William H. Bransten, and driven by his minor son, defendant, James V. Bransten, hereafter referred to as James. On this appeal from the judgment entered on the jury verdict in favor of plaintiff, the contentions are that the trial court erred in rejecting certain expert evidence and in refusing to instruct the jury on the special standard of care applicable to a minor driver.

As no contentions are raised concerning the sufficiency of the evidence, a brief summary of the facts will suffice. The accident occurred about 2 p.m. on November 12, 1961, at the "blind" intersection of Washington and Maple Streets in San Francisco. Both plaintiff and James were licensed drivers. Plaintiff, who was then 84 years old, was driving her 1955 Chevrolet east on Washington Street accompanied by her sister Elizabeth. Elizabeth died as the result of injuries sustained in the accident. James, a 16-year-old, was driving the family 1962 Oldsmobile south on Maple Street with the permission of his father. There was evidence that James was going up the steep Maple Street hill at 25 miles per hour and did not come to a complete stop before entering the intersection.

The Neudeck vehicle was past the center of the intersection

when it was hit on the left by the front of the Bransten vehicle. The speed limit at the intersection was 15 miles per hour (Veh. Code, § 22352). Plaintiff testified that she was going at a slow speed of not more than 15 miles per hour; James, that he was going between 5-10 miles per hour. The police officer who investigated the accident estimated that both vehicles were traveling at approximately the same speed, about 15-20 miles per hour.

Appellants' first contention is that the trial court erred in limiting the testimony of the expert Goldsmith, in his answer to a hypothetical question, to the course of travel of the vehicles after impact and in refusing to admit his testimony that respondent's speed at the time of the collision was approximately 26 miles per hour.

A trial court's determination on the qualification of experts will not be disturbed on appeal unless there is a clear abuse of discretion (*Oakes* v. *Chapman,* 158 Cal.App.2d 78, 82 [322 P.2d 241] ; *Beresford* v. *Pacific Gas & Elec. Co.,* 45 Cal. 2d 738, 749 [290 P.2d 498, 54 A.L.R.2d 910]). Appellants' expert, a professor of mechanical engineering, had written a book on ''Impact.'' It was based on the application of the laws of physics to colliding billiard balls and other objects and on writings and interviews relating to automobile collisions. He had kept current with recent literature on the subject. There was no showing that the witness had had any actual experience in the investigation of traffic accidents or with the numerous intangible factors involved therein. There was testimony on the speed of the vehicles given by the parties and by the investigating officer who estimated respondent's speed at 15-20 miles per hour, only 6 miles per hour less than Goldsmith's offered opinion. Assuming, without holding, that the expert's qualifications were such that the trial court could have properly permitted his testimony on speed, we do not regard its exclusion as an abuse of discretion nor were the appellants materially prejudiced thereby.

Appellants, relying on *Lehmuth* v. *Long Beach Unified Sch. Dist.,* 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887], next contend that the court erred in refusing their proposed instruction, BAJI 147, to the effect that a child, though in violation of an ordinance or statute, is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience.

*Lehmuth* involved an action against the school district and

a minor student who drove an automobile towing a sound trailer without a safety chain as required by law. The sound trailer broke loose and the plaintiff pedestrians were injured. The jury exonerated the driver, who had an expired nonresident driver's license, and returned a verdict against the district. The only appeal was taken by the district.

The Supreme Court, after holding the district's liability was not derivative but was independent from that of the driver, ruled by way of dicta that the trial court did not err in instructing the jury, concerning the liability of the student driver, that the care required of any person under the age of 21 years is not to be judged by the standard applicable to an adult but rather by the degree of care which might reasonably have been expected of a child of like age, capacity and experience under the same or similar circumstances. The court stated at page 555: ''A minor's age alone, though it be 18 years, does not as a matter of law establish maturity such as to impose upon him or her the standard of care applicable to an adult.'' The court also held the lack of a valid license immaterial to the issue of negligence.

In *Shmatovich* v. *New Sonoma Creamery,* 187 Cal.App.2d 342 [9 Cal.Rptr. 630], a wrongful death case, a 17-year-old boy driving without a license, was killed in a collision with another car. The court, relying on *Lehmuth,* ruled that the minor was not held to the same standard of care as an adult in considering the issue of his contributory negligence. The Supreme Court denied a hearing. In *Goodwin* v. *Bryant,* 227 Cal.App.2d 785 [39 Cal.Rptr. 132], involving the primary negligence of a minor driver in an intersection collision, the court, citing *Lehmuth,* also applied the more lenient standard of care by approving BAJI 147.[1] In *Elliot* v. *Jensen,* 187 Cal.App.2d 389 [9 Cal.Rptr. 642], decided in the same month as *Shmatovich,* the court made no mention of *Lehmuth* and held, relative to the contributory negligence of an 18-year-old appellant driver: ''The same duty is imposed by law on all licensed drivers and there is no distinction made as to ages.'' (P. 394.)[2] These conflicting opinions, together with the

---

[1]In *Uddo* v. *Parker* (Cal.App.) 31 Cal.Rptr. 745, the court, relying on *Lehmuth,* also held it not error to give BAJI 147 where the contributory negligence of a minor operating a motor vehicle was involved but the appeal was dismissed after the Supreme Court had granted a hearing.

[2]Several cases dealt with this aspect of a minor's liability prior to *Lehmuth* v. *Long Beach Unified School Dist.* In *Gunter* v. *Claggett,* 65 Cal.App.2d 636 [151 P.2d 271], the court relied on *Merrifeld* v. *Maryland etc. Co.,* 143 Cal. 54 [76 P. 710] (which was not an automobile case) and held that a minor driver's contributory negligence was not to be

peculiar factual situation in the *Lehmuth* case, point to a definite need for clarification.

The language in *Lehmuth* approving BAJI 147 does not refer to the *negligent driving of a motor vehicle by a minor*. The conduct in question was the failure to employ the prescribed safety chain in hitching the trailer to the towing automobile. The supporting cases cited by the court approve the general rule which establishes a different standard of care in determining the negligence of children and adults but none of these cases concern *a minor's liability for the negligent operation of a motor vehicle.*[3] Mr. Justice Schauer, in concurring with the majority opinion in *Lehmuth,* noted this as an exception to the general rule when he commented that ". . . minors who undertake to drive motor vehicles upon the public highways of this state should be subject to the same rules governing *operation of such vehicles* and to the same liability for *breach of such rules,* as are adults.'' (Italics added.)

We hold that when a minor engages in an activity such as driving, which is normally undertaken by adults and for which adult qualifications are required, an exception to the general rule arises, and the minor should be held to the ordinary standard of care. This modern approach to the standard of care applied to minors has been adopted by the Restatement of Torts (Tentative Draft No. 4) § 238A, Comment C, as well as by most of the other jurisdictions (see cases collected at 97 A.L.R.2d 872, et seq.), and has been expounded in several treatises. (2 Harper and James, The Law of Torts (1956) § 16.8, p. 927; Fleming, The Law of Torts (1957) p. 131; Prosser, The Law of Torts (3d ed.) § 32, pp. 159-160).

---

determined by adult standards. In *Mosconi* v. *Ryan,* 94 Cal.App.2d 227, 231 [210 P.2d 259], the court held that the minor driver was not guilty of wilful misconduct as there was no evidence that a 16-year-old boy had an appreciation of the danger.

[3]*Strandt* v. *Cannon,* 29 Cal.App.2d 509 [85 P.2d 160], did not involve a minor driver and simply held that the lack of an operator's license was not a prima facie showing of incompetence. *Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126, 139 [138 P. 712], concerned the contributory negligence of a 12-year-old plaintiff who was injured when playing on an unattended push car left by defendant in a public street and held to be an attractive nuisance. *Guyer* v. *Sterling Laundry Co.* 171 Cal. 761 [154 P. 1057], related to the contributory negligence of a 19-year-old plaintiff who was injured by a machine she operated as an employee in the defendant's laundry. *Satariano* v. *Sleight,* 54 Cal.App.2d 278 [129 P.2d 35], concerned the contributory negligence of a 17-year-old plaintiff who was struck by a car while crossing the street in the middle of the block between the high school gym and athletic field.

We are impressed by the reasoning of the Minnesota Supreme Court in *Dellwo* v. *Pearson,* 259 Minn. 452 [107 N.W.2d 859], which involved the negligent operation of a boat with an outboard motor by a 12-year-old. After pointing out that there may be a difference between the standard of care that is required of a child in protecting himself against hazards and the standard that may be applied when his activities expose others to hazards, the court said: "Certainly in the circumstances of modern life, where vehicles moved by powerful motors are readily available and frequently operated by immature individuals, we should be skeptical of a rule that would allow motor vehicles to be operated to the hazard of the public with less than the normal minimum degree of care and competency.

"To give legal sanction to the operation of automobiles by teen-agers with less than ordinary care for the safety of others is impractical today, to say the least. We may take judicial notice of the hazards of automobile traffic, the frequency of accidents, the often catastrophic results of accidents, and the fact that immature individuals are no less prone to accidents than adults. While minors are entitled to be judged by standards commensurate with age, experience, and wisdom when engaged in activities appropriate to their age, experience, and wisdom, it would be unfair to the public to permit a minor in the operation of a motor vehicle to observe any other standards of care and conduct than those expected of all others. A person observing children at play with toys, throwing balls, operating tricycles or velocipedes, or engaged in other childhood activities may anticipate conduct that does not reach an adult standard of care or prudence. However, one cannot know whether the operator of an approaching automobile, airplane, or powerboat is a minor or an adult, and usually cannot protect himself against youthful imprudence even if warned. Accordingly, we hold that in the operation of an automobile, airplane, or powerboat, a minor is to be held to the same standard of care as an adult."

The large number of automobiles in this state[4] is a matter of common knowledge. Recent U. S. census figures (Code Civ. Proc., § 1875, subd. 3; cf. *Pearson* v. *State Social Welfare Board,* 54 Cal.2d 184 [5 Cal.Rptr. 553, 353 P.2d 33]; *Department of Mental Hygiene* v. *Rosse,* 187 Cal.App.2d 283

[4]The 1963 California Statistical Abstract, published by the State Economic Development Agency, shows that the 1962 registrations amounted to 55.5 vehicles per 100 persons (Table U-14, p. 260).

[9 Cal.Rptr. 589]) indicate that among the states of the Union, California has more than one-tenth of the registered vehicles, of the drivers' licenses in force, and of the motor vehicle accident fatalities.[5] Unless carefully operated, motor vehicles or other similar motor-powered transportation devices become extremely dangerous to the public at large as well as to their operators. ▮ The Legislature has established certain qualifications, including a minimum age requirement, which must be met by everyone obtaining an operator's license (Veh. Code, §§ 12512, 12515, 12516, 12800 et seq.). All drivers, regardless of age, are governed by the same traffic laws. ▮ Most breaches of the rules of the road contained in our Vehicle Code are crimes and under Penal Code section 26, persons over 14 years of age are capable of criminal violations. ▮ A member of the traveling public has the right to expect that others using our highways, regardless of their age and experience, will obey the traffic laws and exercise the adult standard of ordinary care.[6] To permit minors a more lenient standard is unrealistic, contrary to expressed legislative policy and inimical to the public safety.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied April 15, 1965.

---

[5]Statistical Abstract of the U.S. 1962, U.S. Department of Commerce, Bureau of the Census, Table No. 766 at page 563: U.S. Motor Vehicle Registrations: 75,847,000—California Motor Vehicle Registrations: 8,093,000.

*Ibid.*, Table No. 763 at page 560; 84,498,000 licenses in force, 8,155,000 in California.

*Ibid.*, Table No. 772 at page 566: U.S. accidental deaths 37,910; Calif. (place of death) 3,712; Calif. (residence) 3,812.

[6]We note that there is a split of authority on the effect of the minor's compliance with the licensing requirements (97 A.L.R.2d 874 at 875-876 and 886-888) and also as to whether the adult standard is to be applied to the minor's contributory negligence (97 A.L.R.2d 872 at 878 and 881) or only where his primary negligence is in issue, *supra,* at page 884.