[Sac. No. 7709. In Bank. Apr. 13, 1966.]

FRUITRIDGE FIRE DISTRICT, Plaintiff and Respondent, v. MILO T. JUDGE, Defendant and Appellant.

MILO T. JUDGE, Plaintiff and Appellant, v. FRUITRIDGE FIRE DISTRICT, Defendant and Respondent.

(Consolidated Cases.)

John J. Hannegan for Appellant.

Nicholas Alaga and Joseph F. X. Murphy for Respondent.

BURKE, J.—Following a collision between the automobile of Milo T. Judge and a firetruck of Fruitridge Fire District (hereinafter Fruitridge or District), in which the truckdriver was killed, Judge and the District sued each other. Verdicts in the two matters, consolidated for trial and appeal, went against Judge and in favor of the District for damages to its truck. Judge appeals from the ensuing judgments. We have concluded that his contentions of error in the jury instructions with respect to the operation of emergency vehicles, and the presumption of due care on the part of the deceased truckdriver, are without merit, and that the judgments should be affirmed.

The collision occurred at 10 o'clock on a September morning in 1961 at the intersection of Bradshaw Road and Gerber Road in Sacramento County. Bradshaw is a paved two-lane through highway running north-south; Gerber is a paved two-lane road running east-west and is posted with arterial stop signs where it intersects with Bradshaw. Buildings situated at the northwest corner of the intersection somewhat restrict the view of approaching drivers.

District employee Munstenteiger, a fireman who sat on the front seat of the truck next to Chapman, the deceased driver, testified as follows: At the time of the collision the truck was responding to a "mutual aid"[1] call from another district to assist in extinguishing a fire which the men on the truck later learned was a grass fire at a dumping ground. A mutual aid call occurs when the district where the fire is located "has found out they neither can handle or don't have the equip-

---

[1] Mutual aid between local agencies in emergencies is rendered pursuant to sections 53000 et seq. of the Government Code, and when performed outside the local agency's limits "all the privileges and immunities from liability, exemptions from laws and rules, . . . which apply to officers, agents, or employees of the local agency when performing functions within the local agency's limits apply to them to the same extent while performing functions extraterritorially pursuant to this article." (§ 53023.)

ment to handle it.'' The witness knew this particular fire had already been burning for several hours and that other rigs were responding to the same fire, thereby lessening the need for hurry by the Fruitridge truck; and that ''there was no life in danger.'' However, there was a high wind that morning that proved a problem; the wind did not in the witness' view create a greater emergency, but it did not ''lessen the emergency call itself.'' Before reaching the intersection where the accident occurred the firetruck had had to stop at one intersection to permit traffic to clear. It had also stopped momentarily upon being ''waved down'' by a man putting out a small fire near a ditch who then reported he had it out, and the firetruck with siren going and red lights on had also proceeded through a red traffic light at another intersection.

Proceeding easterly on Gerber the truck with windows closed because of dust, but with its red lights flashing and siren blowing, entered the intersection with Bradshaw without stopping for the arterial stop sign, and there collided with the automobile of Judge traveling southward on Bradshaw. Within the last block before the intersection driver Chapman had reduced the truck's speed to 25 to 30 miles per hour, but lifted his foot from the brakes as the truck entered the intersection. One of Munstenteiger's jobs in sitting beside the driver was to watch for traffic on his own side of the truck, rather than on that of the driver from which Judge's car approached, and on his side there were no buildings to block his view. Both the driver and the witness were familiar with the general area and with the intersection.

As a result of Judge's injuries he had no recollection of the events which preceded the actual impact. However, he testified that his speed was 35 to 40 miles per hour as he approached the intersection, that all windows on his automobile were rolled up but he was not sure whether the window on the driver's side was closed, and that he did not see the firetruck or its red lights or hear the siren.

A traffic officer who investigated the accident estimated the speed of the firetruck at 40 to 45 miles per hour. He found no evidence of skidmarks or evasive action by either driver.

 There is no merit in the contention of appellant Judge that the court erred in instructing the jury that Chapman, the deceased truckdriver, was presumed to have exercised ordinary care. It is settled that when alleged negligent acts and conduct of a decedent are at issue and the testimony describing his conduct must be given by other wit-

nesses, an instruction that the decedent is presumed to have exercised ordinary care is proper. An exception to the rule is that if the facts proved by uncontradicted testimony produced by the party seeking to invoke the presumption are wholly irreconcilable therewith then the presumption is dispelled and disappears from the case. (*Brandelius* v. *City & County of San Francisco* (1957) 47 Cal.2d 729, 736 [6, 7] [306 P.2d 432]; *Gigliotti* v. *Nunes* (1955) 45 Cal.2d 85, 92-93 [1-3] [286 P.2d 809], and cases there cited.) ■ The presumption of due care is available to a party against whom the alleged negligence of the decedent is sought to be imputed (*Gigliotti* v. *Nunes, supra,* at p. 94 [7]), including, as here, the decedent's employer. (*Neilsen* v. *Uyechi* (1959) 172 Cal.App.2d 508, 513 [1b] [342 P.2d 329]; *Voorheis* v. *Hawthorne-Michaels Co.* (1957) 151 Cal.App.2d 688, 695 [8] [312 P.2d 51]; *Wells Truckways, Ltd.* v. *Cebrian* (1954) 122 Cal.App.2d 666, 679 [13] [265 P.2d 557].)

■ Munstenteiger, the employee of the District, was the only eyewitness to testify[2] and his testimony was not wholly irreconcilable with the presumption of due care on the part of the deceased driver Chapman. Neither does the evidence establish negligence as a matter of law on the part of the District or its employees. The presumption of care instruction was properly given.

■ Nor is there merit in the suggestion of error in instructing the jury that it "has been established by the evidence in this case that the vehicle by which plaintiff, Milo Judge, claims to have been injured was an authorized emergency vehicle. . . ." This instruction was a correct statement with respect to the District's firetruck (see Veh. Code, §165), and when viewed in the light of other instructions given on the subject of the driving of emergency vehicles did not constitute error and was not unfairly prejudicial to Judge.[3] Such

---

[2]Actually Munstenteiger's testimony was elicited by Judge, who called him as an adverse witness under section 2055 of the Code of Civil Procedure. The District produced no witnesses on its own behalf. (Cf. *Coe* v. *Southern Pac. Co.* (1962) 203 Cal.App.2d 509, 515 [2] [21 Cal.Rptr. 731].)

[3]Other instructions included the following: Vehicle drivers shall stop at the entrance to a through highway and yield the right of way to other vehicles thereon, and shall observe intersection stop signs and yield the right of way. (Veh. Code, § 21802.) Upon the immediate approach of an authorized emergency vehicle sounding a siren and having at least one lighted red light visible, other vehicles shall yield the right of way. (Veh. Code, § 21806.) It is the duty of the driver of an authorized emergency vehicle to exercise "that amount of care which, under all the

instructions twice informed the jury that the driver of an emergency vehicle was obliged to exercise reasonable care under all the circumstances and was not entitled to indulge the exemption privileges in an arbitrary and reckless fashion. The court also told the jury that all instructions were to be considered as a whole. Under the circumstances it does not appear that the instructions placed undue emphasis on the emergency aspects.

The judgments are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.

---

circumstances, would not impose upon others an unreasonable risk of harm . . . under all the circumstances . . . . The question . . . is, 'What would a reasonable, prudent emergency driver do under all of the circumstances, including that of the emergency?' ''

The court also read to the jury excerpts from Vehicle Code section 21055, which exempts authorized emergency vehicles from traffic regulations (such as the basic speed law and the requirement of stopping at the entrance to a through highway) provided the vehicle is being driven in response to an emergency call and its siren is sounding and red light is on. The next instruction informed the jury that this exemption ''does not relieve the driver of such vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor does it protect him from the consequences of an arbitrary exercise of the privileges granted under the exemption. An arbitrary exercise of the privileges granted means . an act performed either with knowledge that serious injury to another will probably result, or with wanton and reckless disregard of the posible consequences.''