[Civ. No. 7786.   Fourth Dist., Div. Two.   July 13, 1966.]

JAMES SCHAUF, a Minor, etc., Plaintiff and Appellant; ROBERT SCHAUF, a Minor, etc., Plaintiff and Respondent; v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Appellant.

[Civ. No. 7787.   Fourth Dist., Div. Two.   July 13, 1966.]

CARL B. McCLAIN et al., Plaintiffs and Respondents, v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Appellant.

(Consolidated Cases.)

Lonergan & Jordan, Lonergan, Jordan & Gresham and Allen B. Gresham for Defendant and Appellant.

Low & West, George O. West, and Henry F. Walker, for Plaintiff and Appellant and for Plaintiff and Respondent in No. 7786.

Vinnedge, Lance & Glenn, Harold J. Lance, and Henry F. Walker for Plaintiffs and Respondents in No. 7787.

TAMURA, J.—These appeals are from judgments in a personal injury action (4th Civil No. 7786) and a wrongful death action (4th Civil No. 7787) arising out of a two-car automobile collision. The accident occurred about 8:15 p.m. on August 21, 1961, at the intersection of Central Avenue and Francis Street in the unincorporated territory of San Bernardino County, between a 1949 Chrysler operated by James Schauf, a minor, west-bound on Francis Street, and a 1957 Chevrolet northbound on Central Avenue. Francis is a two-lane street and Central is a four-lane through street, all streets intersecting Central in the area, including Francis, being controlled by stop signs. The Chrysler failed to stop before entering the intersection.

Robert Schauf (the driver's brother) and Robert and Thomas McClain (brothers), all minors, were occupants of the Chrysler. They, and James Schauf, the driver, all suffered injuries of varying degrees. Robert McClain subsequently died as result of the injuries he suffered. The Schauf brothers, James and Robert, through their father, Simon Schauf, as guardian ad litem, filed a personal injury action against the driver of the Chevrolet, his employer and owner of the Chevrolet, the County of San Bernardino and Southern California Edison Company (hereinafter referred to as Edison). Mr. and Mrs. McClain filed a separate wrongful death action against the same defendants for the death of their son, Robert. The two cases were consolidated for trial.

The county and Edison were joined as defendants on the theory that they negligently maintained a hazardous condition at the intersection in that the visibility of the stop sign (installed by the county in 1940) controlling west-bound traffic on Francis was obstructed by an Edison power pole (installed by Edison in 1937 under a county franchise). The stop sign was located 8 feet north of the north line of Francis and 36 feet east of the east line of Central. The power pole

was located on the north side of Francis about 16 feet east of the stop sign. At the time of the accident, the pole and the stop sign had not been moved from their original positions.

After the commencement of the trial, the county reached a settlement with plaintiffs in both actions and trial proceeded to conclusion against the remaining defendants. The jury returned the following verdicts: (1) in favor of the driver and owner of the Chevrolet against all plaintiffs; (2) in favor of Edison against James Schauf; (3) in favor of Robert Schauf against Edison; and (4) in favor of the McClains against Edison.

James Schauf appeals from the judgment in favor of Edison. Edison appeals from the judgment in favor of Robert Schauf and the McClains.

Pursuant to stipulation of the parties, the appeals have been consolidated for hearing and for disposition by a single opinion.

### JAMES SCHAUF APPEAL

Plaintiff James Schauf seeks a reversal of the judgment in favor of defendant Edison on grounds that the court erred (1) in rejecting the testimony of his father, Simon Schauf, concerning observations he made at the scene of the accident about a week later, (2) in rejecting the testimony of his expert witness relating to the existence of a hazardous condition at the intersection, (3) in improperly instructing the jury by imposing on him the standard of care of an adult and (4) in improperly instructing the jury on the burden of establishing contributory negligence.

To show that the power pole obstructed the visibility of the stop sign as to west-bound traffic on Francis, plaintiffs sought to introduce the testimony of Simon Schauf respecting observations he made when he later visited the scene of the accident at night in an automobile driven by a friend. When asked what his observations were when he got out of the automobile at the intersection and looked at the stop sign he replied: "We stopped and looked it over and you can't hardly see the sign until you get practically right up to it." This and similar answers were stricken. He was permitted to testify that "You could only see a couple or three of the letters" and that the pole looked like ". . . the regular telephone pole," but was not permitted to state how the stop sign and pole appeared to him as he was riding west-bound on Francis toward the intersection.

There was no error in the court's ruling. Plaintiff urges that the witness was simply attempting to relate facts he observed concerning the relationship of the pole to the stop sign as he was traveling westerly on Francis which facts he was unable to convey to the jury except in an opinion or conclusionary form. The offered testimony, however, constituted evidence of an experiment conducted by Simon Schauf to prove that the visibility of the stop sign was obstructed by the pole and that the sign would not become visible in time to serve as a warning to west-bound traffic on Francis. Since experiments conducted outside the courtroom frequently present serious questions concerning similarity of conditions, accuracy of observations, and tendency to confuse rather than clarify issues, the admissibility of the results of such experiments rests in the sound discretion of the trial court whose ruling will be sustained in the absence of clear abuse of discretion. (*People* v. *Ely*, 203 Cal. 628 [265 P. 818] ; *Martin* v. *Angel City Baseball Association,* 3 Cal.App.2d 586 [40 P.2d 287] ; *Beresford* v. *Pacific Gas & Electric Co.,* 45 Cal.2d 738-748 [290 P.2d 498, 54 A.L.R.2d 910] ; *Garcia* v. *Hoffman,* 212 Cal.App.2d 530, 535 [28 Cal.Rptr. 98] ; *Grupe* v. *Glick,* 26 Cal.2d 680, 685 [160 P.2d 832] ; *Buratti* v. *Phetteplace,* 196 Cal.App.2d 303, 309 [16 Cal.Rptr. 500] ; *Holling* v. *Chandler,* 241 Cal.App.2d 19, 23, 24 [50 Cal.Rptr. 219] ; Witkin, Cal. Evidence 361.) There were many possible variables between the conditions under· which the accident occurred and those under which Simon Schauf made his observation such as the speed and position of the vehicle from which observations were made, the observer's position in the vehicle, the amount of illumination, and the acuteness of the observer's vision. Moreover, numerous photographs and diagrams depicting the relationship of the pole to the stop sign with explanatory testimony were received in evidence. There was thus no abuse of discretion in rejecting the offered testimony.

Plaintiff also maintains that certain testimony of his expert witness, Mr. Severy, a research engineer, was erroneously rejected. Objections were sustained to questions seeking to elicit his opinion, based on his examination of photographs of the intersection and its environs, whether the intersection presented a maintenance hazard to west-bound traffic on Francis approaching the intersection. His testimony concerning the existence of a traffic engineering principle which he referred to as ''expectancy'' and described as a ''principle

by which drivers are given proper cuing or advanced warning to situations which for their safety or guidance they are required to know'' was stricken, and an objection was sustained to a hypothetical question as to whether, in his opinion, a normally alert driver west-bound on Francis at the time and place of the accident ''had basis for expectancy of a stop sign as he approached Central''.

██ ██ Although the fact that an expert's opinion is on an ultimate issue of fact to be determined by the jury is not a ground for the exclusion (*Martindale* v. *City of Mt. View,* 208 Cal.App.2d 109, 124 [25 Cal.Rptr. 148] ; *People* v. *Cole,* 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435] ; *Magee* v. *Wyeth Laboratories, Inc.,* 214 Cal.App.2d 340, 357 [29 Cal. Rptr. 322] ; *Carey* v. *Lima, Salmon & Tully Mortuary,* 168 Cal.App.2d 42, 45-46 [335 P.2d 181] ), its admissibility on the issue of the existence of an unsafe traffic condition under circumstances such as are presented in the instant case is a matter resting in the sound discretion of the trial court. (*Martindale* v. *City of Mt. View, supra*; *Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615 [62 P.2d 790] ; *Baccus* v. *Kroger,* 120 Cal.App.2d 802, 803-804 [262 P.2d 349] ; *Neudeck* v. *Bransten,* 233 Cal.App.2d 17, 19 [43 Cal.Rptr. 250].) In *Martindale* v. *City of Mt. View, supra,* the court held that while expert opinion may not be rejected merely because it coincides with an ultimate issue of fact to be determined by the jury, the trial court did not abuse its discretion in sustaining an objection to a hypothetical question propounded to a safety engineer as to whether or not conditions at a railroad crossing constituted a hazard to motorists. ██ The consideration is ''whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert'' would assist the jury. (*People* v. *Cole, supra*; *Magee* v. *Wyeth Laboratories, Inc., supra.*) ██ In excluding the opinion in this case, the court may well have concluded that the subject at issue was so within the jurors' experience that from the diagrams, photographs and explanatory testimony they could intelligently draw their own conclusion, without the aid of an expert, as to whether the conditions of which the plaintiffs complained constituted a traffic hazard and that the expert's opinion, if received, might have been given more weight than would be justified under the circumstances. (*Carey* v. *Lima, Salmon &*

*Tully Mortuary, supra,* at p. 46.) There was no abuse of discretion in the court's rulings.

Plaintiff complains that the giving of BAJI No. 149, Revised,[1] without qualification, erroneously imposed on him, a minor, the duty of care of an adult; he argues that to prove contributory negligence, the defendant should have been required to prove that plaintiff failed to exercise the care required of a minor of his age, experience and capacity.

That issue was laid to rest by the Supreme Court during the pendency of this appeal in *Prichard* v. *Veterans Cab Co.* (Dec. 20, 1965) 63 Cal.2d 727 [48 Cal.Rptr. 904, 408 P.2d 360], where it held that in the operation of a motor vehicle a minor is required to meet the same standard of care established for adults. It resolved the conflict in earlier decisions of the District Courts of Appeal by approving *Neudeck* v. *Bransten, supra,* 233 Cal.App.2d 17 and *Elliot* v. *Jensen,* 187 Cal.App.2d 389 [9 Cal.Rptr. 642] and distinguished *Lehmuth* v. *Long Beach Unified School Dist.,* 53 Cal.2d 544 [2 Cal.Rptr. 279, 348 P.2d 887] on the ground that the negligent conduct of the minor involved in that case was his failure to use a prescribed safety chain on a trailer and not in his manner of operation of a motor vehicle.

Plaintiff finally contends that BAJI No. 149 Revised relating to the presumption of negligence arising from a statutory violation erroneously imposed on plaintiff the burden of dispelling the presumption by a preponderance of the evidence. He maintains that a violation would raise only a rebuttable presumption of negligence which may be overcome by evidence sufficient to balance it. There was no error in the giving of the instruction. It correctly expresses the rule enunciated in *Alarid* v. *Vanier,* 50 Cal.2d 617, 624 [327 P.2d 897]. (*Clements* v. *Donohue,* 231 Cal.App.2d 417, 420 [41 Cal. Rptr. 873]; *Webb* v. *Van Noort,* 239 Cal.App.2d 472, 476 [48 Cal.Rptr. 823].) Moreover, the jury was given the defi-

---

[1]The court gave the following instruction: ''If a party to this action violated Sections 22450(a) or 21802(a) of the Vehicle Code just read to you, a presumption arises that he was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

''To prove that a violation of a statute such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated the statute did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances.''

nition of a presumption and instructed on the effect it should be given (BAJI No. 22) and told that all of the instructions were to be considered as a whole and each in the light of all the others (BAJI No. 2). In the light of all of the instructions, there was no error. (See *Fruitridge Fire Dist.* v. *Judge,* 64 Cal.2d 423, 426-427 [50 Cal.Rptr. 457, 412 P.2d 801].)

The judgment in favor of Edison and against plaintiff, James Schauf, is affirmed.

### ˙ EDISON APPEAL

Plaintiffs urge that Edison was liable because its power pole obscured the stop sign controlling west-bound traffic on Francis, that the existence of that condition constituted a traffic hazard, that despite Edison's constructive knowledge of the dangerous condition, it negligently failed to take affirmative action to guard the traveling public against the danger.

Edison urges several grounds upon which it bases its contention that the judgments in favor of plaintiffs Robert Schauf (4th Civ. 7786) and the McClains (4th Civ. 7787) should be reversed but, as we view it, the controlling issue is whether, under the undisputed facts, Edison had a legal duty to take affirmative steps to guard plaintiffs against the claimed hazard. The undisputed facts are that Edison installed the power pole in 1937 pursuant to a county franchise, the county installed the stop sign in 1940, and neither the pole nor the sign has been moved since its installation.

Except where the ultimate determination as to whether a duty exists turns on forseeability, its existence is initially a question of law, reviewable on appeal, even though reasonable minds may differ as to whether or not a duty should be imposed. (*Amaya* v. *Home Ice, Fuel & Supply Co.,* 59 Cal.2d ,295, 307-309 [29 Cal.Rptr. 33, 379 P.2d 513]; *Richards* v. *Stanley,* 43 Cal.2d 60, 66-67 [271 P.2d 23]; *Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272 [40 Cal.Rptr. 812]; *Raymond* v. *Paradise Unified School Dist.,* 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847].)

Edison contends that the law did not impose upon it the duty to take affirmative steps to correct the dangerous condition, if one existed. It argues that its duty with respect to the maintenance of the pole is limited to its obligations to the county under the terms of the franchise pursuant to which the pole was installed. Section 7 of the franchise ordinance provides: "When any of said poles or wires shall become an

obstruction to the use of any of said streets or highways, or dangerous to the users thereof, said Board of Supervisors shall have the right to order said poles relocated or remodeled at the expense of the grantee of this franchise, its successors or assigns, to avoid such obstruction or danger.'' From this premise, Edison argues that since there was no county demand to relocate, there was no breach of duty. It contends, moreover, that a breach of the franchise would only give rise to a cause of action in favor of the county and not one in favor of third persons, either under a third party beneficiary contract doctrine or as a common law tort. In support of its position, Edison relies upon *Stang* v. *City of Mill Valley,* 38 Cal.2d 486 [240 P.2d 980], and cases there cited. In *Stang, supra,* the court held that the defendant city incurred no liability under the Public Liability Act of 1923 (Stats. 1923, ch. 328, § 2, p. 675, then Gov. Code, § 53051) for fire losses sustained by plaintiff because of a clogged city water main and fire hydrant. The court reasoned that since the Legislature must have been cognizant of the decisions holding that neither a city (*Town of Ukiah City* v. *Ukiah Water & Improv. Co.,* 142 Cal. 173 [75 P. 773, 100 Am.St.Rep. 107, 64 L.R.A. 231]) nor a private citizen (*Niehaus Bros. Co.* v. *Contra Costa Water Co.,* 159 Cal. 305 [113 P. 375, 36 L.R.A. N.S. 1045]) may recover from a private water company for fire losses resulting from the improper maintenance of its water system, it was not reasonable to assume that by enacting the Public Liability Act it intended to impose a greater duty upon a city engaged in the same activity. Edison also relies upon *Moch Co., Inc.* v. *Rensselaer Water Co.,* 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199] where the court, through Chief Judge Cardozo, held that a private water company incurred no liability to an inhabitant of the city for a fire loss resulting from inadequate pressure in the water mains. The court refused to extend the doctrine of third party beneficiary, and, characterizing the company's conduct as nonfeasance, failed to find a common law tort liability.

It is unnecessary, however, to decide whether the failure to relocate the pole at the county's request would have given rise to a cause of action in contract or tort in favor of plaintiffs for it is conceded that the county had never made such a request. Moreover, it is plaintiffs' contention that Edison owed a duty to the public independent of the company's obligations under the franchise.

The fact that a utility company may have lawfully

installed a structure in a public right-of-way pursuant to a permit or a franchise does not excuse it from tort liability for injuries caused by the negligent exercise of the right and power to erect and maintain the structure. (*Gerberich* v. *Southern Cal. Edison Co., Ltd.,* 5 Cal.2d 46 [53 P.2d 948]; *Norton* v. *City of Pomona,* 5 Cal.2d 54 [53 P.2d 952]; *County of Alameda* v. *Southern Pac. Co.,* 55 Cal.2d 479 [11 Cal.Rptr. 751, 360 P.2d 327]; *Barrett* v. *Southern Pac. Co.,* 207 Cal. 154 [277 P. 481].) ▮ Although a utility pole may not have endangered traffic when it was installed, the law imposes on the company a continuing duty to prevent it from becoming a traffic hazard under changed conditions or circumstances. (*Alpine Telephone Corp.* v. *McCall,* 143 Tex. 335 [184 S.W.2d 830]; *Nelson* v. *Duquesne Light Co.,* 338 Pa. 37 [12 A.2d 299, 128 A.L.R. 1257]; see *Beresford* v. *Pacific Gas & Electric Co.,* 45 Cal.2d 738, 746 [290 P.2d 498, 54 A.L.R.2d 910].)

It does not follow, however, that Edison had a duty to take affirmative action to correct the claimed hazard in this case. In all of the cases mentioned in the preceding paragraph, the pole or structure itself constituted the hazard, either as originally installed or under changed conditions. For example, in *Alpine Telephone Corp.* v. *McCall, supra,* 143 Tex. 335 [184 S.W.2d 830] and *Nelson* v. *Duquesne Light Co., supra,* 338 Pa. 37 [12 A.2d 299, 128 A.L.R. 1257] the utility poles were safely positioned when installed but the subsequent construction of a curb in the former case and the improvement of the road and shoulder in the latter caused the poles to extend into the traveled portion of the highway. In the instant case, however, there is no contention that the pole by itself, either because of its location or condition, constituted a hazard to motorists. The dangerous condition, if one existed, consisted of the relationship of the stop sign to the pole. The question is whether that relationship was created or maintained by Edison, either independently or jointly with the county.

▮ In our opinion, the county is the agency which created and maintained the unsafe condition—the relationship of the sign to the pole—by initially placing and thereafter maintaining the stop sign in such a position that its visibility was obscured by the preexisting power pole. The county's action was tantamount to the installation and maintenance of a defective stop sign. In *Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593 [334 P.2d 968], plaintiffs, passengers in an automobile involved in an intersection collision when the vehicle in which they were riding failed to stop before enter-

ing the intersection, sued the city alleging that it was liable for maintaining a dangerous and defective condition of public property in that the visibility of the stop sign was obscured by a tree. Based upon the uncontroverted showing by the city that there was no defect in the stop sign and that the obstruction was caused by a tree growing on adjacent private property, the trial court granted a summary judgment in favor of the city on the ground that plaintiffs failed to make out a case of dangerous and defective condition of public property. In reversing the judgment, the court reasoned: "The tree obscures the sign only because of the location chosen for the sign by the city. The position of public property in relation to other public property, as in the juxtaposition of the sand box and the baseball area in *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989] may create a dangerous condition of public property. Clearly the placing of a stop sign in a location where view of it was blocked by another item of public property, whether a light standard, another sign, or a public building, would present a like fact question as to whether a dangerous or defective condition of public property existed. Indistinguishable is a situation wherein a stop sign is so placed that private property wholly obscures it from view of those it is intended to warn. In such a situation, the placing of the stop sign in the obscured position, rather than the mere existence of the obscuring property, causes the dangerous and defective condition of the sign."

The court's reasoning in *Dudum* v. *City of San Mateo, supra,* 167 Cal.App.2d 593, is apposite to this case. We conclude that Edison did not create or maintain the claimed unsafe condition.

The question remains whether, by having constructive knowledge of the dangerous condition and the power to correct it by relocating its pole, Edison had a duty to take steps to guard motorists against the danger.

██ Ordinarily, in the absence of some special relationship, a person has no duty to take the affirmative steps to protect another from harm arising out of the unlawful conduct of a third person (*Richards* v. *Stanley, supra,* 43 Cal.2d 60, 65; *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447]; *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272, 277; Rest. 2d Torts, § 314, com. a. See *Hergenrether* v. *East,* 61 Cal.2d 440, 444 [39 Cal.Rptr. 4, 393 P.2d 164].) In *Goodman* v. *Harris, supra,* it was held that a lessor incurred no

liability to a business visitor of the lessee (guest occupying a tourist cabin operated by lessee) even though the lessor was aware of the existence of a dangerous condition on the premises (defective gas heater installed by lessee prior to renewal of the lease), could have foreseen injuries to visitors, and could have eliminated the condtion by terminating the lease. And in *Wright* v. *Arcade School Dist., supra,* it was held that a school district was not liable for injuries suffered by a pupil who was struck by an automobile while crossing a busy highway in proximity to the school despite the district's knowledge of the hazard through several prior incidents wherein children had been hit by cars while crossing the street in going to or from school. The court held that the district was under no affirmative duty to provide a crossing guard.

In a recent Oregon case decided during the pendency of this appeal and involving facts which were apparently similar to those in the instant case, the Oregon Supreme Court held that, as a matter of law, there was no duty on a utility company to relocate a power pole which interfered with the visibility of a stop sign installed by the state long after the installation of the power pole. (*Ashland* v. *Pacific Power & Light Co.* (Sept. 23, 1964) 239 Ore. 241 [395 P.2d 420, 397 P.2d 538].) Plaintiff was a passenger in a vehicle which, without stopping, entered an intersection from a street controlled by a stop sign and collided with a vehicle approaching from the intersecting street. On appeal from a judgment of nonsuit in favor of the utility company, plaintiff argued that the company owed a common law duty to motorists not to obscure the stop sign since such action would create a trap for the unwary traveler.[2] In affirming the judgment, the court observed that plaintiff's contention might have been meritorious if the pole had been installed after the stop sign but held that since the sequence was in reverse there was no duty on the company to relocate its pole or to otherwise guard against the hazard. The court referred to the common law rule that an abutting land owner is not required to guard against a dangerous condition which existed on his property prior to the dedication of the highway (see *Galiano* v. *Pacific Gas & Electric Co.,* 20 Cal.App.2d 534 [67 P.2d 388]; Rest. 2d Torts, § 368, com. c) and that, by analogy, there was no duty on an abut-

---

[2]In the absence of a possible error in the facts stated in the opinion, it is not apparent how the obstruction of the stop sign described in the opinion would have any bearing upon the happening of the collision. The court assumed, however, that there was a causal connection between the obstruction of the stop sign described and the accident.

ting owner to remove a lawfully constructed structure after the state erected a stop sign even though the prior structure interfered with the visibility of the sign. The value of the case as authority on the issue presented in the instant case is somewhat lessened by the fact that the opinion fails to disclose whether the power pole was located within the street right-of-way pursuant to a permit or franchise or on adjoining private property. Despite this factual variance, if there be one, the case is persuasive authority.

In our opinion, policy considerations, which this court should weigh in determining whether a common law duty should be judicially imposed (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 310; *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Wright* v. *Arcade School Dist., supra,* 230 Cal.App.2d 272; *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1; Prosser, Torts (2d ed.) p. 172), do not require the imposition of a duty on a utility company to take affirmative action to guard against a hazard such as was created and existed in this case. It would not be reasonable to require a utility company to maintain a constant vigil to determine whether a public agency has placed a stop sign in a position which might later be claimed to be in such a position as to be obscured by a preexisting utility pole. The company should be able to assume that the governmental authority will properly position and maintain such signs. If a duty were to be imposed on the utility company to take corrective action in the instant case, relocation of the power pole may be the only means available to it since it has no control over the placement or relocation of the stop sign, that being a power reserved to the public authority having jurisdiction. (Veh. Code, §§ 21350-21355, 21465.) On the other hand the county, upon which rested the legal responsibility for the proper installation and maintenance of stop signs (Veh. Code, §§ 21351, 21354; *Irvin* v. *Padelford,* 127 Cal.App.2d 135 [273 P.2d 539]; see *Teall* v. *City of Cudahy,* 60 Cal.2d 431 [34 Cal.Rptr. 869, 386 P.2d 493]) could have corrected the condition which it created by simply moving the stop sign or by posting an appropriate advance sign to warn motorists of the impending stop. Nor will the failure to impose a duty on the utility company leave an injured person remediless. One who is injured as a proximate result of the negligent failure to repair a defective stop sign may seek and obtain redress from the public agency responsible for its installation and maintenance

(*Dudum* v. *City of San Mateo, supra,* 167 Cal.App.2d 593;
*Bady* v. *Detwiler,* 127 Cal.App.2d 321 [273 P.2d 941]; *Rose*
v. *County of Orange,* 94 Cal.App.2d 688 [211 P.2d 45]; *Silva*
v. *County of Fresno,* 63 Cal.App.2d 253 [146 P.2d 520];
*Ervin* v. *City of Los Angeles,* 117 Cal.App.2d 303 [256 P.2d
25]) and such agency, of course, has the means to spread
equitably any financial losses it may be required to assume.
The factors mentioned show, also, that the imposition of a
duty on the utility company to take affirmative action in the
circumstances here presented is not necessary for the future
prevention of harm.

We conclude that Edison was not under a legal duty
to take corrective action to eliminate the claimed traffic hazard.

Since we have determined that there was no legal duty on
Edison to guard against the unsafe condition, there is no
question of concurrent negligence or intervening causation;
(*Richards* v. *Stanley, supra,* 43 Cal.2d 60, 69).

In view of the foregoing, it is unnecessary to consider other
grounds of reversal argued by Edison.

The judgments in favor of Robert Schauf and the McClains
are reversed and the trial court is directed to enter judgments
in favor of Edison in each case.

McCabe, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied August 2, 1966, and
plaintiffs' petition for a hearing by the Supreme Court was
denied September 7, 1966.